Elkar Realty Corp., Respondent, *v.* Mitsuye T. Kamada, Doing Business as Tsuruya Restaurant, Appellant.

First Department, July 1, 1958.

156

*Jack Newton Lerner* for appellant.

*Joseph R. Apfel* of counsel (*Milton J. Freundlich,* attorney), for respondent.

BERGAN, J. In September, 1956 the landlord and tenant entered into a lease for 10 years of " the parlor floor front and back " in 237 West 105th Street. These premises were to be used for " a tea room and restaurant and for no other purpose ".

The weight bearing capacity of the floor thus demised as shown by the certificate of occupancy of the department of housing and buildings of the City of New York was 75 pounds " live load " per square foot and the permissible use under the certificate would be a store, office, or show room.

The statutory requirement for a restaurant contemplates a floor capable of carrying a live load of at least 100 pounds per square foot (Administrative Code of City of New York, § C26-344.0). In the condition in which the floor existed at the time of leasing, therefore, the demised premises which the tenant could use for a tearoom and restaurant " and for no other purpose " could not lawfully be afforded the utilization stated in the leas<sup>n</sup>

The lease expressly required the tenant to occupy the premises in such a way as not to place upon the floor a load per square foot in excess of that "allowed by law".

It is clear from all this in searching the intention and understanding of the parties that although the lease provided in express terms that the landlord was not deemed to have made any "representation or guaranty" that a restaurant business might be conducted in the demised premises or be permissible under the certificate of occupancy; that both parties expected some physical alterations necessarily were to be made in the premises in order to conduct a restaurant business there.

The words found in immediate context give force to this. The contingency that "alterations" might be required "to permit the lawful conduct" of the tenant's business or "to comply with the certificate of occupancy" was met by the statement that "the same" are to "be made by and at the sole expense of Tenant".

The parties must, therefore, be deemed to have been entering into a lease for a purpose not then legally permissible because of the physical condition of the premises; but which could readily be made permissible by strengthening the floor; and both parties must be deemed to have contemplated that the floor would be reinforced by the tenant to become capable of carrying the permissible load.

The lease itself was certainly not void for illegality; it contemplated a corrected and hence a lawfully occupied premises; and it would fail as a valid contract only if the contemplated correction became impossible and the legal bar to the sole use within the terms of the lease remained in force.

Since the bar to legal use was thus readily correctible; and since the parties must be deemed by the language which they elected to use in the instrument to have intended that it be corrected, such decisions as *Municipal Metallic Bed Mfg. Corp.* v. *Dobbs* (253 N. Y. 313, 318) and *Hart* v. *City Theatres Co.* (215 N. Y. 322, 325–326, 330) do not control this case.

On the other hand it would be contemplated in such a leasing that the necessary changes would take some time to negotiate and to carry out; and it would be expected certainly that while this was going on the rent should be paid. If, however, it became impossible to make the changes through no fault of the tenant, the lease would be deemed to terminate. It would thereupon have become demonstrated that the intended correction of the unlawful condition could not be effected; and termination of the lease could be found to have resulted by the implied agreement of the parties flowing consequently from the language of the lease

Upon taking occupancy in October, 1956 the tenant retained an architect and began to make changes in the premises suitable for the purpose of the lease. In order to strengthen the floor it became necessary to install lolly columns or beams through the basement of the building; but this portion of the premises had been leased to another tenant without reservation by the landlord of the right to make such changes and after some discussion between the landlord and tenant about where the responsibility for obtaining this consent lay, it is undisputed that the tenant here involved tried to obtain but did not obtain the consent of the other tenant for this work.

The tenant then suggested to the landlord that a modification of the lease be made to permit another use and was told that the use intended be specified and would be passed on. No modification resulted and the lease was unchanged. The tenant paid the rent from October, 1956 to February, 1957 without objection; but from March to June she paid it without prejudice to her rights after a series of summary proceedings had been instituted; and the proceeding here involved is a summary proceeding for the months of July and August.

In this summary proceeding the tenant interposed counter-claims based on money had and received, breach of covenant, and illegality of premises; and after a trial the Municipal Court awarded the tenant a judgment on her counterclaim of $2,400, based on the nine months' rental paid, in the sum of $1,800 and $600 for return of the deposit which the tenant had made on the lease.

On appeal the Appellate Term reversed this decision and granted judgment as demanded in the petition in summary proceedings, i.e., a final order of possession; and judgment for $400 for the unpaid rent for the last two months. The theory of decision in the Municipal Court seems to have been that the lease was unlawful and hence that no rental whatever could be now due under it; and that the deposit must be returned; the theory of decision in the Appellate Term was that the tenant took the premises " as is " with an express disavowal of representation by the landlord they could be lawfully occupied under the certificate of occupancy and that there was no refusal by the landlord to give consent to the changes needed to put the premises in order for the contemplated use.

It seems clear that it was beyond the legal power of the tenant to require the consent of the other tenant to make the contemplated structural changes; and, indeed, it was beyond the legal right of the landlord to require such a consent. The factual finding is implicit in the Municipal Court's decision

which has not in this respect been disturbed at Appellate Term, that tenant was unable to obtain such necessary consent.

When this became apparent she was, in our view, justified in disavowing the lease and requiring the return of her deposit. She is, however, not entitled to a return of the rent paid during a period when she remained in possession and during which it could reasonably have been within the contemplation of the parties that lawful occupancy would ultimately result. We think such conduct conformable with the possible lawful execution of the lease continued through the period during which she voluntarily paid rent; and also, although this is a closer question, during the period in which, under the series of summary proceedings, she paid the rent without prejudice. This latter series of payments, in our view, is to be deemed a continuance of expectation on her part that in some form the lease would become workable; such an expectation ended upon the failure to pay the final two months' rent and the institution of the summary proceeding. This view of the case leads us to the opinion that the tenant should have judgment on the counterclaim for the amount of the deposit of $600.

The judgment should be reversed to grant judgment on the counterclaim in favor of the tenant-appellant for $600.

RABIN, J. P., M. M. FRANK, McNALLY and STEVENS, JJ., concur.

Judgment unanimously reversed to grant judgment on the counterclaim in favor of the tenant-appellant for $600.

Settle order.