*518 OPINION OF THE COURT
Paul G. Feinman, J.
Defendant moves, preanswer, to dismiss the complaint. For the reasons set forth below, the motion is granted in part and denied in part.
Background
Plaintiffs, the Commissioner of the New York City Department of Consumer Affairs (DCA) and the City of New York, allege that defendant American Tax Relief, LLC violated the Consumer Protection Law which prohibits “deceptive trade practices” in the offering of its services to New York City consumers (notice of motion to dismiss verified complaint 1Í1Í 2, 7). Plaintiffs allege that defendant mailed six promotional mailings between September 27, 2002 and May 31, 2005 to approximately 16,000 New York City taxpayers against whom the Internal Revenue Service (IRS) had filed tax liens. Specifically, defendant allegedly mailed postcards containing deceptive language designed to mislead the recipients into believing that defendant could obtain relief on their behalf (Smyth affidavit n 3-4). By letter dated September 22, 2005, the DCA notified defendant that it had engaged in “repeated, multiple, and persistent violations” of the Administrative Code of the City of New York and that if it did not “demonstrate in writing, within five days,” that it had not engaged in prohibited conduct, the City of New York would commence an action (Kreindler affidavit, exhibit C). Through its attorney, defendant wrote to plaintiffs that it could assure DCA that it had discontinued disseminating the advertising as of “the end of May 2005,” and that “no other advertisements will ever be disseminated within New York City” (Kreindler affidavit, exhibit D, letter of Kreindler to Smyth at DCA, Oct. 10, 2005). Plaintiffs commenced the instant action on about June 5, 2006 by filing the summons and verified complaint.[1]
The six postcard mailings at issue contain similar language and information. Four of them state that “Congress has recently *519 passed NEW laws, making it easier to settle tax debts,” and “many people who did not previously qualify for tax relief can now take advantage of these NEW changes and settle for much less.” (Notice of motion, exhibit E) The second and sixth mailings do not discuss passage of new laws, but state instead that “[i]f you owe the IRS or you are in an unbearable Monthly Payment Plan that seems to get you Nowhere, we can help you Today.”
Five of the cards state that defendant’s “staff of tax professionals has helped thousands settle their taxes for only Pennies-on-the-Dollar.” Except for minor variations in the second mailing, they all state that defendant “can also Immediately Stop Wage Garnishments, Bank Levies, suffocating IRS Payment Plans, and Remove Penalties and interest.”[2] All of them invite the reader to call defendant’s toll-free number for a “FREE, confidential consultation,” and three add a Web site address. Five of them state either that “A Permanent Solution is Available Now,” or that “A Permanent Solution is Available Today.”
Plaintiffs argue that the language in the mailings had the capability or effect “of leading consumers to believe that all consumers who contact” defendant would be able to take advantage of “new” laws that made it easier to settle tax debts for “pennies on the dollar,” and that defendant could stop all wage garnishments, bank levies, and seizures of their assets. Plaintiffs also contend that the assertions were not true and were made without disclosing that taxpayers must first qualify for the Internal Revenue Service’s restrictive Offer in Compromise (OIC) program before they can settle their tax debts (verified complaint 1Í1Í12-29).[3]
The verified complaint contains two causes of action. The first is that defendant has engaged in deceptive trade practices *520 by repeatedly and persistently representing that there were new laws which many people could now take advantage of, and that it had helped “thousands” of taxpaying consumers to settle their debts, as well as stopping wage garnishments, and other IRS remedies, in violation of Administrative Code of City of New York §§ 20-700 and 20-701 (verified complaint 1f1i 51-51). The second cause of action is that defendant failed to disclose clearly and conspicuously, as required by 6 RCNY 5-09, the conditions of applying for the OIC program (verified complaint HH 54-55). Plaintiffs seek civil penalties, injunctive relief, and costs pursuant to section 20-703 of the Administrative Code (verified complaint 11 4).
Defendant moves preanswer to dismiss the complaint on the ground that it fails to state a cause of action (CPLR 3211 [a] [7]). It argues that the mailings “merely encouraged potential customers” to contact it for a free consultation or visit its Web site for more information. It points out that the mailings did not solicit payment, quote fees or costs, or claim a certain recovery percentage for satisfied customers. It argues that the mailings also did not make promises or guarantees about tax relief. It further argues that it had no prior notice from plaintiffs that its mailings were improper. It also suggests that because the most recent offending postcards were mailed approximately one year prior to the commencement of the litigation, and there were “no complaints . . . received during the three prior years,” as well as the fact that it was cooperating with the DCA and agreed never again to disseminate the cards in New York City, the proposed penalties are unnecessary and disproportionate (Kreindler affidavit 11 7).
Legal Analysis
In determining a preanswer motion to dismiss, the court must “accept the facts as alleged in the complaint as true, accord plaintiff! ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory.” (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; accord, Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 318 [1995].) “In ruling on a motion to dismiss, the court is not authorized to assess the merits of the complaint or any of its factual allegations, but only to determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action” (P.T. Bank Cent. Asia, NY. Branch v ABN AMRO Bank N.V., 301 AD2d 373, 376 *521 [1st Dept 2003]). The test is “whether the proponent of the pleading has a cause of action, not whether he has stated one” (Leon v Martinez, supra at 88). Evidentiary material may be considered on a motion to dismiss to remedy defects in a complaint (Beyer v DaimlerChrysler Corp., 286 AD2d 103, 111 [2d Dept 2001]). However, allegations consisting of bare legal conclusions or factual claims which are either inherently incredible or clearly contradicted by documentary evidence, are not entitled to such consideration (Franklin v Winard, 199 AD2d 220, 220 [1st Dept 1993]).
Deceptive Trade Practice
The first cause of action alleges that defendant violated sections 20-700 and 20-701 (a) of the Administrative Code. Section 20-700 states in relevant part that no one “shall engage in any deceptive . . . trade practice in . . . offering for sale . . . any consumer goods or services.” Section 20-701 defines “deceptive trade practice” as any “false ... or misleading oral or written statement . . . made in connection with the . . . offering for sale ... of consumer goods or services . . . which has the capacity, tendency or effect of deceiving or misleading consumers.” The term includes “the use, in any oral or written representation, of exaggeration, innuendo or ambiguity as to a material fact or failure to state a material fact if such use deceives or tends to deceive.” (Administrative Code § 20-701 [a] [2].) There is no requirement of a showing that consumers were actually harmed (Administrative Code § 20-703 [e]).
Defendant argues that the statements at issue are not “false” nor made with “an intent to deceive or mislead” but are only “exaggeration” and “omission,” and that exaggeration is not actionable under the State’s deceptive practices law, General Business Law §§ 349 and 350, and therefore cannot be at issue under Administrative Code § 20-700 (defendant’s mem of law at 6; see, Whitestone Bridge Drive-In Theatre v O’Connell, 14 AD2d 51, 54 [1st Dept 1961] [holding that New York State Constitution and Municipal Home Rule Law allow municipality to adopt laws for local general welfare of inhabitants “subject to the limitation that they shall not be inconsistent with nor contravene laws of the State, and that they bear a reasonable relation to the objective sought to be achieved”]). Defendant further notes that there is no published decision construing the term “exaggeration” as concerns section 20-701 of the Administrative Code, and argues that “puffery,” defined as “exaggeration or overstatement expressed in broad, vague, and commendatory *522 language,” “a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion,” and an “exaggerated, blustering, and boasting statement upon which no reasonable buyer would rely” is not actionable under General Business Law §§ 349 and 350 (defendant’s mem of law at 6, quoting Verizon Directories Corp. v Yellow Book USA, Inc., 309 F Supp 2d 401, 405 [ED NY 2004]). It also contends that the statute’s use of the term “exaggeration” is impermissibly vague and thus unenforceable.
Where a statute is subject to interpretation, the court will in general defer to the construction given to it by the agency responsible for its administration, as long as the construction is not unreasonable or irrational (23 Realty Assoc. v Teigman, 213 AD2d 306, 308 [1st Dept 1995]). The Commissioner of the Department of Consumer Affairs, as administrator of section 20-700 of the Administrative Code, has been empowered to promulgate rules and regulations that will effectuate the prohibition of deceptive and unconscionable trade practices (Administrative Code § 20-702), and the Commissioner’s rational construction of the statute in such rules and regulations is thus entitled to deference (23 Realty Assoc. at 308). Additionally, the legislative history for the Consumer Protection Law, as a whole, “leaves no doubt that the Legislature sought to confer broad jurisdiction on the Commissioner of Consumer Affairs over unfair trade practices” (Polonetsky v Better Homes Depot, 185 Misc 2d 282, 286 [Sup Ct, NY County 2000], affd 279 AD2d 418, revd on other grounds 97 NY2d 46 [2001]). Here, however, there is no ambiguity as to the meaning of the statute as a whole.
“Deceptive or misleading representations or omissions are defined objectively as those ‘likely to mislead a reasonable consumer acting reasonably under the circumstances’ ” (Solomon v Bell Atl. Corp., 9 AD3d 49, 52 [1st Dept 2004], quoting Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 26 [1995] [interpreting General Business Law §§ 349, 350]). Plaintiffs must sufficiently allege and ultimately prove that defendant made “misrepresentations or omissions that were likely to mislead a reasonable consumer in the plaintiff’s circumstances, that the plaintiff was deceived by those misrepresentations or omissions and that as a result the plaintiff suffered injury” (Solomon at 52, citing Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 325 [2002]).
*523 The contents of the postcard mailings, when examined under the CPLR 3211 standard which grants the plaintiffs the benefit of every possible favorable inference, are of two different types. The first and third through fifth mailings can best be described as invitations to the reader to contact defendant who is described as having the expertise to help “many” people with their tax issues and who might help them obtain a “permanent solution.”[4] Contrary to plaintiffs’ argument, the language of these cards clearly implies that not everyone can be helped and that individuals will learn whether they can be helped only after consulting with defendant’s “tax experts.” However, the second and sixth mailings unambiguously state that recipients of the cards “can be helped Today” with their “Unbearable Monthly Payment Plants],” and that defendant can stop wage garnishments, bank seizures, and assessment of interest and penalties. These two mailings, unlike the others, make explicit promises which for purposes of this motion cannot be described as “puffery” and could by a trier of fact be found to be purposely misleading and deceptive (see, Federal Trade Commn. v Pantron I Corp., 33 F3d 1088, 1099 [9th Cir 1994], cert denied 514 US 1083 [1995] [holding that a “false advertisement” “need only be misleading in a material respect”]).
Failure to Disclose
Plaintiffs’ second cause of action is premised on defendant’s omission of material information concerning the restrictive qualifications for relief under the IRS’s QIC program, in violation of 6 RCNY 5-09 (a), which requires advertisers to “disclose clearly and conspicuously all material exclusions, reservations, limitations, modifications or conditions.” The rule sets forth several “examples” of the kinds of facts which must be disclosed. Plaintiffs argue that defendant’s mailings should have included information that would have informed the recipients of the many and restrictive qualifications for successful application to the IRS’s QIC program. The omission of this information, plaintiffs argue, was misleading and contributed to the deceptive nature of the mailings.
Defendant argues that there was no need to include information about the IRS’s OIC program as recipients of the mailings would have also received numerous mailings from the IRS concerning their tax delinquencies, including infor *524 mation about the OIC program and its requirements for qualification. It also contends that the offer of a free consultation, printed on each mailing, is the equivalent of the example described in section 5-09 (a), requiring sellers of goods to disclose when an item is not available at all store locations and that consumers should check with their local store to learn about the availability of the item in question (defendant’s reply mem at 15). Even if this analogy pertained to the four mailings which also include the language that “many” people can be helped and that “thousands” have been helped, it is not sufficient for the second and sixth mailings which nowhere suggest that help is not available to any who contact defendant’s offices. However, defendant is not persuasive that its mailings should not, at the very least, have included notice that the “new” laws pertained to the OIC program and listed at least some of the qualifications, along with a statement that the list was not exhaustive. As noted by plaintiffs, the existence of the OIC program and its restrictions act as a “material” condition to the offer by defendant and must, under section 5-09, be disclosed. Accordingly, viewing the allegations in the light most favorable to plaintiffs, the second cause of action is a viable one and that branch of the motion to dismiss which seeks its dismissal must be denied.
Proposed Remedies
Defendant’s arguments against the nature and type of remedies sought by plaintiffs in the verified complaint are irrelevant to the determination of this motion to dismiss. CPLR 3017 (a) provides that with the exception of default judgments, a court “may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded, imposing such terms as may be just.” As set forth in one treatise,
“Where the pleader has stated a good cause of action, the complaint will not be subject to dismissal if the demand asks for relief to which the plaintiff is not entitled or relief that is inconsistent with the cause of action stated. . . . Accordingly, the demand normally is not considered in determining the character or nature of the action or the sufficiency of the pleading.” (Weinstein-Korn-Miller, NY Civ Prac 11 3017.02.)
The actual relief to be awarded is thus the determination of the trial court (id.). As plaintiffs have not made a motion for a preliminary injunction, any injunctive relief shall also be addressed after trial.
*525 Accordingly, it is ordered that the motion to dismiss is granted only to the extent that the first cause of action is dismissed as concerns the first and third through fifth mailings, and denied as it pertains to the second and sixth mailings; and it is further ordered that the motion to dismiss is denied as it pertains to the second cause of action.

. On June 1, 2006, a separate class action was brought in Kings County Supreme Court (Index No. 16771/2006), alleging deceptive acts or practices in the conduct of its business and false advertising (General Business Law §§ 349, 350), and breach of contract for failure to provide the services it promised, and seeking to enjoin defendant from its “false” advertising practices and “deceptive, fraudulent and illegal practices” as well as damages and restitution (Kreindler affidavit, exhibit E, verified class action complaint).

. The second mailing states that defendant “can also Immediately Stop Paycheck Garnishments, Stop Bank and Property Seizures, Remove Penalties and Interest, and Eliminate suffocating IRS Payment Plans” (notice of motion, exhibit F).

. According to plaintiffs, in February 2004 and again in about October 2004, the IRS issued “consumer alerts” warning consumers of promotions by companies claiming to be able to settle tax debts for “pennies on the dollar” who were directing their claims to taxpayers with “no chance of settling” their disputes because they could not qualify for the OIC program (Smyth affidavit H 13, exhibits B, C). The OIC program, which permits a taxpayer to repay only a portion of taxes owed in full satisfaction of the entire obligation, has extensive requirements which preclude most consumers from taking advantage of the program (verified complaint ITU 30, 49; see Smyth affidavit, exhibit A, IRS form 656, offer in compromise).

. Only at oral argument did plaintiffs call into question whether in fact there were “new” laws passed by Congress that could affect delinquent taxpayers.