OPINION OF THE COURT
Margaret A. Chan, J.
Plaintiff is a transgender female who is a client of the New York City Human Resources Administration’s (HRA) HIV/AIDS Services Administration (HASA). She was diagnosed with gender identity disorder, and has completed convertive surgery. On August 31, 2011, plaintiff requested that HASA update its records to reflect her legal name change and change of gender information, and to obtain a benefits card to reflect the same. Plaintiff alleged that HASA denied her request to change the gender marker on her benefits card and that HASA employees demeaned her by continuing to address her by her former male name and using male pronouns. Plaintiff brings four causes of action against the defendants. The first two are related to gender and disability discrimination under the New York State Human Rights Law (State HRL) pursuant to Executive Law § 290 et seq., and the third and fourth causes of action cite gender and disability discrimination under the New York City Human Rights Law (City HRL) pursuant to Administrative Code of the City of New York § 8-107 (4) and (6). The City made the instant motion to dismiss the complaint for failure to state a cause of action. The decision and order is as follows:
The crux of plaintiffs claims is that she was denied access to benefits which included immediate processing of her request to update HASA’s records with her legal name and correct gender marker. HASA refused to update its records until plaintiff submitted a request to change name form with an amended birth certificate. When plaintiff requested a written explanation of HASA’s actions, she had to sign a release using her birth name, rather than her legally changed name; plaintiff complied, reluctantly. Plaintiff also claimed that HASA employees further demeaned her by continuing to address her by her former male name and using male pronouns. Plaintiff argued that the interaction with HASA violated her right to privacy because the HASA employees were speaking loudly so that others in the office were privy to plaintiff’s request and knowledge of her change of gender.
Defendants respond that plaintiff does not have a claim as HASA never ceased provision of any service or benefits to plaintiff. The only impediment was that it was not able to amend *504 its records until it processed plaintiffs name change request. Defendants added that at no time was plaintiff discriminated against nor harassed. At oral argument, defendants clarified that if plaintiff was harassed or demeaned by HASA employees, it did not rise to the level of discrimination.
Discussion
In considering a motion to dismiss the court must construe the complaint liberally and accept the pleaded facts as true to determine whether the facts fit into any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]; P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V., 301 AD2d 373, 375 [1st Dept 2003]). The court must accept not only the material allegations of the complaint, but also whatever can be reasonably inferred therefrom in favor of the pleader (see P.T. Bank Cent. Asia, 301 AD2d at 375).
As plaintiffs claim arose from her request to change her records and benefits card to reflect her female name and gender, it is important to note the following facts: plaintiff, who was identified male at birth, had a female gender identity since early childhood, and by age 12, had started taking hormones and testosterone suppressants. Subsequently, she had undergone medical and surgical procedures to transition from male to female. On March 8, 2011, she petitioned and received a court-ordered name change from her birth name to her chosen name. On August 8, 2011, plaintiff requested defendants to change her HASA records and benefits card to reflect her female gender and name. Plaintiff explained that every time she used the benefits card, she was subjected to embarrassment, humiliation, discrimination, accusations, and denial of services because the card indicated the holder to be male while plaintiff presented as female with a female name.
To effectuate the change in the benefits card and record, plaintiff and her patient navigator presented documents such as a court-issued name change order, and a letter from her treating physician stating that she had completed all the procedures to transition from male to female to plaintiffs HASA case manager, Mr. Diawouh. However, Mr. Diawouh stated that he could only submit the request for a name change to the HRA case manager, but could not guarantee that the request would be granted. He summarily denied the gender marker change as plaintiff did not have a birth certificate that reflected her gender as female as required by HASA’s administrative policy. Plaintiff explained that she could not get an amended birth certificate to *505 accommodate HASA’s administrative policy because she was born in Puerto Rico where gender markers may not be amended on official documents such as birth certificates. A supervisor, Mr. Carthen, and the center manager, Mr. Jean Louis, were called into the case; they also denied the amendment of the gender marker absent a birth certificate with a female gender identification. Eventually, HASA updated plaintiff’s records pursuant to her legal name change without the amended birth certificate.
Under these facts, the question is whether plaintiff has stated a cause of action under the State and/or City HRL for unlawful discrimination based on sexual orientation or disability when she was denied accommodations, including a change to her benefits card, and being subjected to the mistreatment she alleged. Plaintiff argues that benefits include the accommodations, not just the tangible benefits, as defendants would have it. Defendants argue that the benefits card is not a benefit, but a means for clients to obtain tangible benefits such as food, housing, financial assistance, and health care.
Both the City HRL and State HRL protect certain groups from policies or practices that discriminate against them in areas such as employment, public accommodations and housing (see Executive Law § 296; Administrative Code § 8-107). The City’s HRL is more expansive than that of the State’s. It was amended in 2005 to broaden its protection against discrimination (see Albunio v City of New York, 16 NY3d 472, 477 [2011]). As amended, Administrative Code § 8-130 reads as follows:
“The provisions of this title [i.e., the New York City Human Rights Law] shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.”
The Court of Appeals has stated that “[t]he City’s Human Rights Law goes the additional step of prohibiting policies or practices which, though neutral on their face and neutral in intent, have an unjustified disparate impact upon one or more of the covered groups.” (Levin v Yeshiva Univ., 96 NY2d 484, 489 [2001].)
Plaintiffs grievances here are (1) the impracticability of effectuating a change in her benefits card and (2) the treatment *506 to which she was subjected in the process. Addressing first HASA’s administrative policy of requiring a birth certificate identifying a person’s gender to change its gender marker. The policy is facially neutral. However, as can be seen through plaintiffs efforts, the policy does not appear to accommodate a certain group. “A claim of discrimination based on sexual orientation can be stated where a facially neutral policy or practice has a disparate impact on a protected group” (id. at 491; Administrative Code § 8-107 [17] [a] [l]-[2]). For the transgender community, while there are procedures on obtaining a change to one’s birth certificate after convertive surgery — at least in New York City — it does not hold true everywhere. Plaintiff claims that Puerto Rico does not permit changes to gender markers in official documents such as birth certificates, and cites Delgado, Ex Parte (165 DPR 170 [2005]) to support her claim. Alas, the case is in Spanish without English translation, hence, the support it purports to give to plaintiff is unknown. Nevertheless, support is found in a case, written in English, from California, Diaz v Oakland Tribune, Inc. (139 Cal App 3d 118, 123, 188 Cal Rptr 762, 765 [1983]), where the plaintiff in Diaz, after her convertive surgery, successfully changed all her records and official documents to reflect her gender change, except for her Puerto Rican birth certificate. Puerto Rico did not permit changes to gender markers in birth certificates (id.).
Under the present HASA policy, a transgender person, such as plaintiff, who cannot obtain a change to his/her birth certificate will not be able to obtain a benefits card to indicate a change in his/her gender despite legal name change and documentation from a doctor stating that the medical convertive surgery was complete. While plaintiff is still eligible for HASA benefits, the unchanged benefits card denies or hampers access to those benefits. As plaintiff had experienced, she was subjected to accusations of fraud, and denial of tangible benefits because she did not present as a man, contrary to the benefits card indication. Therefore, while plaintiff is eligible for HASA benefits, she risks loss of such benefits due to her hampered access to them. Thus, while HASA’s policy appears to be equal across the board, its practical impact for the transgender community is not.
As for the treatment to which plaintiff was subjected, accepting the allegations as true for the purposes of this motion to dismiss, the purposeful use of masculine pronouns in addressing *507 plaintiff, who presented as female, and the insistence that she sign a document with her birth name despite the court-issued name change order, is not a light matter, but one which is laden with discriminatory intent. HASA employees knew of her convertive surgery, and yet did not treat her accordingly or appropriately. Their acts are against the tenets of HASA which is to assist its clients with housing, medical and financial needs. It cannot be said that plaintiff felt demeaned for any reason other than abject discriminatory reasons (see generally Matter of Birney v New York City Dept. of Health & Mental Hygiene, 34 Misc 3d 1243[A], 2012 NY Slip Op 50520[U] [Sup Ct, NY County 2012] [discussion of transgender people obtaining gender change marker in birth certificates]). Thus, based on the foregoing, plaintiff has sufficiently stated a cause of action. Defendants’ motion to dismiss is denied.