[33 NYS3d 7]

Jack Kelly Partners LLC, Appellant, v Elsa Zegelstein et al., Respondents.

First Department, May 12, 2016

## APPEARANCES OF COUNSEL

*Moulinos & Associates LLC*, New York City (*Peter Moulinos* and *Ian Henri* of counsel), for appellant.

*Port & Sava*, Lynbrook (*George S. Sava* of counsel), for respondents.

## OPINION OF THE COURT

TOM, J.P.

Plaintiff, as tenant, and defendants, as owner, entered into a commercial lease agreement dated March 7, 2006 for second floor space of a building located at 210 East 60th Street in Manhattan for a term of five years and two months, commencing March 1, 2006, at a monthly rent of $4,000. Under paragraph 57 (B), the lease stated that "Tenant shall use and occupy the Demised Premises for general offices of an executive recruiting firm" and "no other purpose." Paragraph 57 (A) provides that plaintiff was not permitted to use the premises in any manner that "violates the certificate of occupancy for the Demised Premises, if any, or for the Building," or that violates any other laws or regulations.

Plaintiff asserts that in December 2007, it discovered that the certificate of occupancy (CO) for the building required that the leased premises be used only for residential purposes. Plaintiff further claims that, it requested defendants to amend and correct the CO to permit the demised premises to be used for commercial purposes, but defendants refused to comply. Plaintiff vacated the premises on May 8, 2009 and commenced this action asserting causes of action for rescission, a declaratory judgment that the lease was invalid, unenforceable and illegal, and breach of contract.

Plaintiff's breach of contract claim was dismissed by a prior order of the Supreme Court. Thereafter, the parties moved and cross-moved for summary judgment relating to plaintiff's remaining causes of action, and defendant's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing.

The court denied plaintiff's cross motion for summary judgment on its causes of action for rescission and for a declaratory judgment, declared that the lease between the parties was valid and enforceable, and granted defendants' motion for sum-

mary judgment dismissing the complaint and granting them judgment on their counterclaim for breach of contract.

Because there are issues of fact as to whether plaintiff's cause of action for rescission of the lease can be proved on the grounds of impossibility, fraud or misrepresentation, and also whether the lease should be terminated based on frustration of purpose, defendants' motion for summary judgment dismissing the amended complaint should not have been granted.

While there is case law holding that "[t]he mere failure of a landlord to obtain a certificate of occupancy before a commercial tenant's date of occupancy does not, without more, give the tenant the right to terminate the lease" (*Progressive Image Gruppe v 162 Charles St. Owners*, 272 AD2d 66, 66 [1st Dept 2000]), those cases are clearly distinguishable from the facts of this case. Notably, *Progressive* cites to *Jordache Enters. v Gettinger Assoc.* (176 AD2d 616 [1st Dept 1991]), which in turn relies on *56-70 58th St. Holding Corp. v Fedders-Quigan Corp.* (5 NY2d 557, 561 [1959]). Significantly, both *Jordache Enters.* and *56-70 58th St.* deal with situations in which the absence of a valid CO could be readily cured by obtaining a corrected CO, whereas it is unknown from this record whether the CO could be corrected based on zoning or other local ordinances or regulations to allow the demised premises to be used for commercial purposes, or whether defendants were willing to have it corrected.

Further, in *56-70 58th St.,* "[t]he tenant knew, when it signed the lease and immediately entered into possession, that plans had to be drawn and approved and the specified alterations completed before a new certificate would issue" (*id.* at 561-562). The tenant agreed but failed to afford the landlord the opportunity to "exhaust all remedies" to obtain a new certificate and prematurely vacated the premises (*id.* at 561-562). The Court of Appeals pointed out that a conforming CO was issued within days after tenant vacated the premises, and found that the tenant breached the lease agreement. In the present case, plaintiff was not aware that the use intended by the lease as represented by defendants was prohibited by the CO or that a new CO would have to be requested and issued, and when requesting defendants to assist in conforming the CO, plaintiff claims defendants refused.

In any event, in *Progressive*, this Court, in denying the tenant's motion for summary judgment, also found that there were issues of fact "as to whether defendant made a specific

representation concerning permitted uses under the certificate of occupancy, and, if so, whether plaintiff's alleged reliance thereon was reasonable" (272 AD2d at 67). According to the present complaint, defendants advertised and conveyed to the general public that the premises were suitable for commercial use, and the executed lease indicated that only such use was permitted. Plaintiff thus claimed it relied on defendants' statements and representations concerning the use of the premises. Plaintiff stated, in an affidavit from Jack Kelly, plaintiff's founder and president, that it had relied on defendants' representation that the premises may be used as an office, and that when it informed defendants that the commercial use of the space was not in conformity with the CO, defendants failed to assist plaintiff's attempt to revise the CO. In fact, at his deposition, Kelly explained that although he confirmed with the Department of Buildings (DOB) that the premises were only to be used for residential purposes, defendant Debra Zegelstein insisted that the DOB had made a mistake and defendants directed plaintiff to continue to occupy the premises to conduct its business. Concluding that further discussions with defendants would be futile, and fearing that the space posed a danger to its employees and clients, plaintiff vacated the premises. Plaintiff argued that under Reference Standard 9-2 of the New York City Building Code, commercial office space must be certified to withstand a live load of 50 pounds per square foot, while a residential CO only requires the building to be certified to withstand a live load of 40 pounds per square foot. Plaintiff argued that this live load deficiency put plaintiff's employees and guests at risk and vacated the space within a matter of months.

In support of defendants' motion for summary judgment, defendant Elsa Zegelstein submitted her affidavit stating that when Kelly approached her about the CO, she "indicated a desire to assist him" but Kelly was not interested. Defendants also submitted Kelly's deposition testimony wherein he stated that he did not know whether the CO could be changed with regard to the premises and that plaintiff did not submit paperwork in order to change the CO.

Paragraph 6 of the lease agreement provides:

> "Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments . . . which shall impose

any violation, order or duty upon Owner or Tenant with respect to the demised premises, whether or not arising out of Tenant's use or manner of use thereof, (including Tenant's permitted use)."

However, notwithstanding paragraph 6, there are issues of fact as to whether plaintiff's cause of action for rescission can be proved. While the purpose of the lease was for the space to be used as an office and plaintiff is in fact prohibited from any other use, the lease also prohibits plaintiff from using the premises in violation of the CO, and the CO itself prohibits commercial use of the space. Therefore, plaintiff properly raises the excuse of impossibility of performance as its ability to perform under the lease was destroyed by law (*see 407 E. 61st Garage v Savoy Fifth Ave. Corp.*, 23 NY2d 275, 281 [1968]). Absent defendants' willingness to alter the CO it was impossible for plaintiff to perform its obligations under the lease, and the evidence raises an issue of fact as to whether defendants were willing to cooperate in this regard.

Nor should defendants be shielded by plaintiff's obligation in the lease to obtain any necessary licenses or permits for the premises under paragraph 57 (D) of the lease. Indeed, that obligation specifically excepts changes to the CO, and defendants would certainly have to, at a minimum, participate in changing the CO (*cf. Kosher Konvenience v Ferguson Realty Corp.*, 171 AD2d 650 [2d Dept 1991] [finding lease valid where language used in the lease indicates that the parties intended that the defect in the CO be corrected and the premises legally occupied, and where the lease specifically provided that the tenant would procure a certificate of occupancy at its own expense in the event one was required by any governmental authority]).

Moreover, as a matter of equity, defendants should not be able to hide behind the "no representations" clauses included in the lease while at the same time having represented to plaintiff that the premises are suitable for commercial use, and in fact stating in the lease that plaintiff's use of the space as an office is "deemed to be a material inducement to the Landlord to enter into this Lease" and that tenant shall use the space for "no other purpose." The same paragraph provided that the parties "agree . . . that any use or occupancy by Tenant of the Demised Premises for a purpose not specifically set forth above shall be deemed a material default by Tenant." Under this scenario, plaintiff was in "default" immediately

upon the execution of the lease since the stated commercial use was in violation of the CO, an incongruous result.

■ Of course, "[t]here is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case" (*Callanan v Keeseville, Ausable Chasm & Lake Champlain R.R. Co.*, 199 NY 268, 284 [1910]). Further, fraud sufficient to support the rescission requires only a misrepresentation that induces a party to enter into a contract resulting in some detriment; proof of scienter is not necessary and even an innocent misrepresentation is sufficient for rescission (*see D'Angelo v Hastings Oldsmobile*, 89 AD2d 785 [4th Dept 1982], *affd* 59 NY2d 773 [1983]; *see also Seneca Wire & Mfg. Co. v Leach & Co.*, 247 NY 1, 8 [1928]). Accordingly, even assuming defendants were truly unaware that the CO prohibited commercial use of the premises and made an innocent misrepresentation, rescission may be appropriate (*see e.g. New Talli Enters., Inc. v Van Gordon*, 2003 NY Slip Op 51066[U] [Civ Ct, Richmond County 2003] [granting rescission of a lease where, unbeknownst to the parties, use of premises not permitted under the CO, even though the lease included boilerplate provision that the landlord had made no promises or representations with respect to the demised premises]).

■ Finally, as an alternative consideration, there is an issue of fact as to whether the lease should be terminated on the ground of frustration of purpose. In order to invoke this defense, "the frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense" (*see Crown IT Servs., Inc. v Koval-Olsen*, 11 AD3d 263, 265 [1st Dept 2004]; *see also* Restatement [Second] of Contracts § 265, Comment *a*). Here, without the ability to use the premises as an office, the transaction would have made no sense, and the inability to lawfully use the premises in that manner combined with defendants' alleged failure and refusal to correct the CO constitutes a frustration of purpose entitling plaintiff to terminate the lease (*see Elkar Realty Corp. v Kamada*, 6 AD2d 155 [1st Dept 1958], *lv dismissed* 5 NY2d 844 [1958]; *see also Two Catherine St. Mgt. Co. v Yam Keung Yeung*, 153 AD2d 678, 679 [2d Dept 1989] ["Since the intended purpose of the lease may have become impossible to effectuate through no fault of the defendant tenant, he may have been entitled to terminate the lease"]).

Accordingly, the order of the Supreme Court, New York County (Paul Wooten, J.), entered October 23, 2014, which, to

the extent appealed from, denied plaintiff's cross motion for summary judgment on its causes of action for rescission and for a declaratory judgment, declared that the lease between the parties is valid and enforceable, and granted defendants' motion for summary judgment dismissing the amended complaint and for summary judgment on their breach of contract counterclaim, should be modified, on the law and the facts, to vacate the declaration that the lease between the parties is valid and enforceable, and to deny defendants' motion for summary judgment dismissing the amended complaint and for summary judgment on their breach of contract counterclaim, and otherwise affirmed, without costs.

SWEENY, RICHTER and MANZANET-DANIELS, JJ., concur.

Order, Supreme Court, New York County, entered October 23, 2014, modified, on the law and the facts, to vacate the declaration and deny defendants' motion, and otherwise affirmed, without costs.