Solomon Capital, LLC v Lion Biotechnologies, Inc. (2019 NY Slip Op 02621)





Solomon Capital, LLC v Lion Biotechnologies, Inc.


2019 NY Slip Op 02621


Decided on April 4, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 4, 2019

Sweeny, J.P., Manzanet-Daniels, Kern, Oing, Singh, JJ.


8896 651881/16

[*1]Solomon Capital, LLC, et al., Plaintiffs-Respondents,
v
Lion Biotechnologies, Inc., Defendant-Appellant.


Troy Gould PC, Los Angeles, CA (Russell I. Glazer of the bar of the State of California, admitted pro hac vice, of counsel), for appellant.
Proskauer Rose LLP, New York (Mark D. Harris of counsel), for respondents.



Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered August 15, 2018, which, to the extent appealed from as limited by the briefs, granted plaintiffs' motion to dismiss the eleventh affirmative defense and the first through fourth counterclaims as against plaintiffs Solomon Capital, LLC, Solomon Capital 401(k) Trust, and Solomon Sharbat, unanimously reversed, on the law, with costs, and the motion denied.
Accepting the allegations in the answer as true, and according defendant the benefit of every possible favorable inference, we find that the eleventh affirmative defense and first through fourth counterclaims are adequately pleaded.
In support of the eleventh affirmative defense and first counterclaim alleging fraudulent inducement (see Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009]), defendant alleges, as relevant herein, that, during a conference call with its CEO and CFO, plaintiff Solomon Sharbat, who was at the time a registered broker dealer with the Financial Industry Regulatory Authority (FINRA), represented, on behalf of himself and the other plaintiffs, that he had previously run a publicly traded U.S. company, that he had raised hundreds of millions of dollars for other biotech companies, that he had "massive investors" who were prepared to invest in defendant, and that these investments were "a done deal." Sharbat allegedly later asserted that he "had obtained high-value investors for [defendant] in Israel."
The statement that investments were "a done deal" is mere puffery; it has no fixed meaning (see Sidamonidze v Kay, 304 AD2d 415 [1st Dept 2003]).
However, Sharbat's statements that he had "massive investors" who were prepared to invest in defendant and that he "had obtained high-value investors for [defendant] in Israel," while partially hyperbolic, make concrete factual representations that go beyond mere puffery. Simply stated, Sharbat asserted that he had investors lined up and ready to go, when in fact he had none. Since plaintiffs were retained by defendant to bring investors in, these statements constitute misrepresentations of material facts for purposes of the fraudulent inducement counterclaim (see Sokolow, Dunaud, Mercadier & Carreras v Lacher, 299 AD2d 64, 70 [1st Dept 2002]). Finally, the statements that Sharbat had previously run a publicly traded U.S. company and that he had raised hundreds of millions of dollars for other biotech companies are concrete and measurable misrepresentations about Sharbat's experience (see White v Davidson, 150 AD3d 610, 611 [1st Dept 2017]).
It is undisputed that defendant adequately alleged scienter. In addition, it adequately alleged justifiable reliance (see Knight Sec. v Fiduciary Trust Co., 5 AD3d 172, 173 [1st Dept 2004]). Thus, defendant adequately pleaded its affirmative defense of fraudulent inducement seeking rescission of the parties' agreement (see People v Credit Suisse Sec. [USA] LLC, 31 NY3d 622, 639 [2018] [Paul G. Feinman, J., concurring]; Jack Kelly Partners LLC v Zegelstein, 140 AD3d 79, 85 [1st Dept 2016], lv dismissed 28 NY3d 1103 [2016]).
Defendant stated a counterclaim for fraudulent inducement by pleading the additional [*2]element of damages, in the form of expenses incurred, at Sharbat's insistence, in retaining nonparty investment bank New World Merchant Services LLC to prepare for a securities offering anticipated based on investment monies promised by plaintiffs. Defendant was not required to plead its damages with particularity; CPLR 3016(b) requires only that, for claims or defenses based on fraud, "the circumstances constituting the wrong shall be stated in detail [emphasis added]" (see A.S. Rampell, Inc. v Hyster Co., 3 NY2d 369, 383 [1957]; Kensington Publ. Corp. v Kable News Co., 100 AD2d 802, 802 [1st Dept 1984]).
The allegations that plaintiffs failed to disclose a FINRA investigation into Sharbat and the resulting FINRA complaint and eventual default judgment barring him from serving as a broker-dealer state a counterclaim for fraudulent concealment, under the special facts doctrine (see P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V., 301 AD2d 373, 376, 378 [1st Dept 2003]). The initiation of the investigation was known to plaintiffs but was not a matter of public record and could not be discovered by defendant. Moreover, Sharbat was declining to cooperate with the investigation, with the predictable result that he ended up losing his broker-dealer license. Sharbat's being stripped of a financial license by a regulatory authority for impropriety could reasonably be expected to destroy defendant's confidence in him, whether or not the license was being used in their financial transaction.
In support of the counterclaim for breach of fiduciary duty, defendant alleges that plaintiffs were retained to "broker" investments for it by "represent[ing] it in its efforts to obtain investors both in the United States and abroad, in Israel," and that they advised defendant to retain New World "to provide investment banking services for an offering that would be funded from the investments [they] would broker." Defendant further alleges that plaintiffs billed it for more than $135,000 in expenses that they claimed they had incurred in their efforts to secure investors, and that, at plaintiffs' instance, defendant gave plaintiffs a promissory note in the amount of $135,000, plus 67,500 shares of stock, as well as a right to participate in the next round of financing "on the same terms offered to the investors that [plaintiffs] would bring to [defendant]." These allegations plead a broker-principal relationship sufficient to impose a fiduciary duty on plaintiffs vis-a-vis defendant (see EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19-20 [2005]). Plaintiffs' fiduciary role carried with it a duty to disclose material facts, including developments and filings in the FINRA investigation (see Allen v Westpoint-Pepperell, Inc., 945 F2d 40, 45 [2d Cir 1991]).
Defendant alleges that plaintiffs negligently misrepresented that they were able to represent it in obtaining investors and facilitating the issuance of securities to raise capital for it, that they were skilled in obtaining financing from "high-value investors," that they "had qualified, high-value investors who were to invest in [defendant]," and that plaintiffs themselves were qualified to invest in defendant. Defendant further alleges that plaintiffs made these misrepresentations with the intent of inducing it to rely on them and that it relied on the misrepresentations to its detriment by, among other things, incurring fees and expenses in retaining New World and attempting to make a securities offering with New World. These allegations state a counterclaim for negligent misrepresentation (see Kimmell v Schaefer, 89 NY2d 257, 263-264 [1996]; Krog Corp. v Vanner Group, Inc., 158 AD3d 914, 918 [3d Dept 2018]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 4, 2019
CLERK