City of New York v Exxon Mobil Corp. (2025 NY Slip Op 25011)

[*1]

City of New York v Exxon Mobil Corp.

2025 NY Slip Op 25011

Decided on January 14, 2025

Supreme Court, New York County

Patel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 14, 2025
Supreme Court, New York County

The City of New York, Plaintiff,

against
Exxon Mobil Corp., EXXONMOBIL OIL CORPORATION, 
 ROYAL DUTCH SHELL PLC, SHELL OIL COMPANY, BP P.L.C., BP AMERICA INC., and AMERICAN PETROLEUM INSTITUTE, Defendants.

Index No. 451071/2021

Counsel for Plaintiff: Nathan Michael Potter Taylor, Esq., Theresa Clarke Dernbach, Esq., Alice Robie Baker, Esw., of the New York City Law Department; Matthew Kendall Edling, Esq., Anna Dale Applebaum, Esq., and Quentin Karpilow, Esq., of Sher Edling LLP
Counsel for Defendants: Daniel J. Toal, Esq., David King Kessler, Esq., and Theodore V. Wells, Esq., of Paull, Weiss, Rifkind, Wharton & Garrison, LLP; Beth Ann Wilkinson, Esq., Owen Whitney Gallogly, Esq., and Keri Lynn Arnold, Esq., of Wilkinson Stekloff LLP; Loly G. Tor, Esq., of K&L Gates, LLP; Diana Elizabeth Reiter, Esq., of Arnold & Porter Kaye Scholer LLP; Aaron Fong Jaroff, Esq., of McGuireWoods LLP.

Anar Rathod Patel, J.

The following e-filed documents, listed by NYSCEF document number (Motion 007) 69—78, 109—134, 162, 163, 177—180, 193—196, 212—214, 222—223 were read on this MOTION TO DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 008) 86—103, 108, 166, 167, 181—190, 218—220, 222—223 were read on this MOTION TO DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 009) 79—84, 107, 164, 165, 191, 192, 215—217, 222—223 were read on this MOTION TO DISMISS.
Plaintiff, the City of New York ("Plaintiff" or the "City"), commenced this action by filing the Summons and Verified Complaint on April 22, 2021. NYSCEF Doc. No. 1 (Summons and Compl.). Plaintiff alleges that Defendants ExxonMobil Corporation and ExxonMobil Oil Corporation (together, "Exxon"), BP p.l.c. and BP America Inc. (together, "BP"), Royal Dutch Shell P.L.C and Shell Oil Company (together, "Shell") (collectively, "Defendants"), and the [*2]American Petroleum Institute ("API")[FN1]
engaged in deceptive trade practices under New York City's Consumer Protection Law ("CPL"), codified at N.Y.C. Administrative Code § 20-700 et seq., by systematically misleading New York City ("NYC") consumers about the environmental impact of their fossil fuel products and their commitments to renewable energy. The City alleges two causes of action [FN2]
against Defendants: (1) violation of the CPL by misrepresenting the purported environmental benefit of their fossil fuel products, and failing to disclose the attendant climate change risks of these products, and (2) violation of the CPL by engaging in false and misleading greenwashing campaigns. Id. ¶¶ 76—92. The City requests that Defendants be permanently enjoined, pursuant to N.Y.C. Admin. Code § 20-703(d), from engaging in any acts that violate the CPL; an award of civil penalties in an amount as authorized per violation of the CPL, pursuant to N.Y.C. Admin. Code §§ 20-703(a), (b); and the costs of this action and reasonable attorneys' fees pursuant to N.Y.C. Admin. Code § 20-703(c).
Relevant to the instant action is the City's prior suit against five fossil fuel companies, including Defendants in this action, seeking recovery for damages caused by global warming pursuant to state tort laws for public nuisance, private nuisance, and trespass. See City of New York v. BP P.L.C. et al., 325 F. Supp. 3d 466 (S.D.NY 2018), aff'd City of New York v. Chevron Corp., 993 F.3d 81 (2d Cir. 2021) ("SDNY Action"). In that case, the District Court dismissed the action on the pleadings with prejudice concluding that, inter alia, federal law preempts the City's state law claims. On April 1, 2021, the Second Circuit affirmed, holding that issues such as global warming and emissions invoke questions of federal and foreign policy. Approximately three weeks later, the City commenced the instant action, effectively re-purposing many of its allegations in the dismissed action to assert a claim under the CPL. Compare Compl. with NYSCEF Doc. No. 75 (Am. Compl., City of New York v. BP P.L.C, et al., 18-CV-182-JFK).
Defendants removed this action to the United States District Court for the Southern District of New York on May 28, 2021, and the City moved to remand. NYSCEF Doc. No. 4 (Notice of Removal). The case was stayed for approximately two years, and subsequently remanded to the Supreme Court of the State of New York, County of New York on May 8, 2024. NYSCEF Doc. No. 6 (Notice of Remand). 
Before the Court are Defendants' Motions to Dismiss the Complaint pursuant to CPLR §§ 3211(a)(5), (7), (8), and 3211(g).[FN3]
In their respective Motions to Dismiss, Defendants argue that (a) the Court lacks personal jurisdiction over claims based upon statements made outside of New York under CPLR § 3211(a)(8); (b) the allegations fail to state a claim for violations of the CPL under CPLR § 3211(a)(7); (c) the City's claims violate the First Amendment where it seeks to regulate speech on matters of public concern; (d) the Complaint should be dismissed pursuant to [*3]New York's Anti-SLAPP statute, codified at CPLR § 3211(g); and (e) pursuant to CPLR § 3211(a)(5), the City's claims for statements that predate April 22, 2018, should be dismissed as time-barred and statements that predate January 9, 2018—when the SDNY Action was filed—are barred by res judicata. The Court held oral argument on these Motions on November 1, 2024. NYSCEF Doc. No. 210 (11/1/24 Tr.).
For the reasons stated below, Defendants' Motions are granted and the City's Complaint is dismissed in its entirety. The Complaint fails to state a claim for violations of the CPL for two predominant reasons. First, the City's allegations that NYC consumers are climate conscious, yet are being misled by Defendants' failure to disclose that fossil fuels cause climate change is not sustainable because the City propounds that the connection between fossil fuels and climate change is publicly known information. Second, the City has not sufficiently pled that Defendants' alleged greenwashing campaigns, involving statements about clean energy and alternative energy sources, are "made in connection with the sale" of a consumer good (i.e., fossil fuel products) in NYC, as required under the CPL. The Court further determines that claims for statements that predate April 22, 2018 are time-barred.
I. Relevant Factual and Procedural Background
The following facts and allegations are taken from the Verified Complaint and Appendix. NYSCEF Doc. No. 1 (Compl.), 2 (App.). Defendants BP, Shell, and Exxon are three of the largest, multinational oil and gas companies engaged in the exploration, production, manufacturing, and transportation of fossil fuel products. Compl. ¶¶ 11—13. "Consumer use of fossil fuel products, by driving gasoline-powered cars and other vehicles as well as electric and home energy choices, is a significant contributor to climate change . . ." Id. ¶ 18. Because climate change presents an existential threat to humanity, NYC consumers are confronted with choices between fossil fuels and energy alternatives. Id. ¶¶ 1, 4. According to the Complaint, NYC consumers seek to reduce fossil fuel consumption and therefore seek products and services that align with their goals. Id. ¶ 4; see also id. ¶ 21. 
The City alleges that, knowing this, Defendants have waged deceptive advertising campaigns that misrepresent the "central role their products play in causing the climate crisis," and deprive consumers of information regarding the climate impacts of their products. Id. ¶¶ 2, 5, 8. Plaintiff further alleges that Defendants disseminated advertisements, social media posts, and other promotional materials directed at NYC consumers that falsely portray Defendants as corporate leaders in the fight against climate change despite their "miniscule" investments in clean energy resources relative to their overall business. Id. ¶¶ 6, 20. Plaintiff alleges that a "NYC consumer might purchase fewer—or no—fossil fuel products if provided with accurate information that fossil fuel use was a primary driver of climate change and the resultant danger to the environment and people." Id. ¶ 24. For example, a consumer may choose public transportation, fuel-efficient vehicles, or electric appliances over natural gas appliances. Id. 
Plaintiff alleges that Defendants' deceptive campaigns consist of two forms of "greenwashing": (1) "product greenwashing" statements intended to mislead consumers as to the climate benefits of specific gasoline products without disclosing the adverse impacts of those products on the climate, id. ¶¶ 31, 32, 33; see also id. ¶ 26 ("they never disclose the material fact that fossil fuels—'emissions-reducing' or otherwise—are the primary cause of climate change"); and (2) "corporate greenwashing" statements intended to present Defendants as climate-friendly thereby inducing consumers to purchase their fossil fuel products, id. ¶¶ 40—69. Plaintiff alleges [*4]that the misleading product and corporate greenwashing statements in the Complaint and accompanying Appendix are "non-exhaustive examples" "targeted at or disseminated to New York City consumers during the past three years." App. 2.
A. Product Greenwashing
The City identifies three products advertised and sold by Defendants in NYC: (1) BP's additive, Invigorate, used in all grades of the fuel sold in NYC; (2) Shell's Nitrogen Enriched Cleaning System and a line for its premium grade of fuel called V-Power Nitro+ Premium; and (3) Exxon's line of products using Synergy additive. Compl. ¶¶ 31—33. The City alleges the following statements are misleading because they emphasize purported environmental benefits without disclosing that fossil fuels cause climate change. Except as denoted, Plaintiff alleges that these statements are advertised on various platforms, including branded gas stations in NYC.
• BP [FN4]
• BP advertises Invigorate, "an additive that BP describes on its website as better than 'ordinary fuels' that have problems like 'increased emissions'." Compl. ¶ 33(a); App. 6(a).
• BP's website advertises its fuel selection as "including a growing number of lower-carbon and carbon-neutral products." Compl. ¶ 33(b); App. 6(a).
• Shell
• Shell advertises the Shell Nitrogen Enriched Cleaning System and a line for its premium grade of fuel called V-Power Nitro+ Premium as "produc[ing] fewer emissions." Compl. ¶ 32(b); App. 4(a). • Shell advertises that not using V-Power Nitro+ Premium could lead to "higher emissions." Compl. ¶ 32(b); App. 4(a). • Exxon [FN5]
• Exxon advertises "Environmental performance . . . Conscientious practices. Rigorous standards . . . Continually improving environmental performance while pursuing reliable and affordable energy." Compl. ¶ 31(f); App. 2(a).
• "We're continually innovating to develop products that enable customers to reduce their energy use and CO2 emissions. For example, we have: Developed specially formulated synthetic lubricants for cars, trucks and industrial equipment that last longer and help end-users reduce their energy consumption . . . Created tire liners that retain air better than their predecessors, thereby improving vehicle fuel efficiency . . . Developed a technology to improve the separator films used in lithium-ion batteries, which are used in laptops, cell phones and, increasingly, hybrid vehicles." App. 2(a).
• "Engineered Fuel Technology Synergy™ fuels to help improve fuel economy and [*5]reduce CO2 emissions." Compl. ¶ 31(f); App. 2(a).
• "ExxonMobil claims, including at its branded gas stations in New York City, that the fuel will 'take you further,' and contains more detergents than required by the Environmental Protection Agency." App. 2(a).
• Synergy Diesel Efficient™ fuel is the "latest breakthrough technology" that helps consumers "[r]educe emissions and burn cleaner," and "was created to let you drive cleaner, smarter and longer." Compl. ¶ 31(d); App. 2(b).
• Synergy™ Supreme+, which contains the Synergy™ additive to fuels, is "Our Best Fuel Ever," "2X cleaner for better gas mileage," and will enhance vehicle fuel economy in newer engines designed to meet tougher vehicle emissions standards. Compl. ¶ 31(c); App. 2(c).
• Synergy™ gasolines are "engineered for" "[l]ower emissions"—but then explains in smaller print that it "[h]elps remove deposits, which can lead to fewer emissions." Compl. ¶ 31(e).
• Exxon advertises on its website in its 2021 Energy and Carbon Summary that "Premium fuels such as Synergy™ gasoline and diesel also help consumers improve gas mileage. By improving engine efficiency and fuel economy, these products can help reduce greenhouse gas emissions compared to conventional lubricants and fuels. ExxonMobil is progressing several multibillion-dollar refinery expansion projects to supply the growing demand for these advanced products." Compl. ¶ 31(g); App. 2(d).
Plaintiff does not assert that the statements are false—nor is it required to do so under the CPL as discussed infra—but that they are misleading by emphasizing the climate-friendly benefits of the product without disclosing the material fact that the product still causes climate change despite the claims of reduced emissions. Compl. ¶¶ 26, 81, 83. Plaintiff alleges these omissions are particularly egregious given the established link between fossil fuels and climate change, and thus "render even seemingly truthful statements about fossil fuel use [as] false and misleading." Id. ¶ 90.
B. Corporate Greenwashing
The City alleges that Defendants deceptively greenwashed their corporate images through marketing and public relations initiatives, with the goal of influencing consumers and increasing product sales in NYC. Id. ¶ 6. Defendants portray themselves as committed to renewable energy and sustainability while continuing to invest heavily in fossil fuel production. Id. ¶¶ 35—46. Plaintiff alleges Defendants engaged in two forms of corporate greenwashing: (1) exaggeration of Defendants' overall investment in clean energy resources, such as wind and solar technologies; and (2) misrepresentation of the climate benefits associated with their purported "alternative energy sources," such as liquified natural gas (LNG), hydrogen fuel cells, and biofuels. Id. ¶¶ 35—36, 40—69. Ultimately, these greenwashing campaigns mislead environmentally conscious consumers into supporting Defendants' products and services under the false impression that they are prioritizing sustainability. Id. ¶¶ 20, 42—44.
Regarding the first category of misrepresentations, Plaintiff alleges that Defendants "are bombarding NYC consumers with advertisements that give the false impression that renewable and low-carbon energy is an extensive portion of their business" without disclosing "that those investments are negligible in comparison to the billions of dollars that they spend (and make) [*6]annually on fossil fuels." Id. ¶ 40. Because Defendant Exxon does not "tell consumers that its primary business remains the extraction, production and sale of planet-warming fossil fuels," consumers are left with the "false impression that the company is taking ambitious steps towards cutting greenhouse gas emissions, shifting its investments towards clean energy, and researching next generation solutions to climate change." Id. ¶ 52; see also id. ¶¶ 55 (as to Defendant Shell), 61 (as to Defendant BP). As to the second category of misrepresentations, Plaintiff alleges that Defendants omit or downplay information about the greenhouse gas emissions associated with alternative energy resources. Id. ¶¶ 65, 67.
Like its allegations of product greenwashing, Plaintiff does not allege that each of, or the amalgam, of alleged corporate greenwashing statements is false. Rather, Plaintiff asserts that the cumulative impact of statements about investment in clean energy resources and the climate benefits associated with alternative energy sources misled the NYC public to "capture the large and growing segment of consumers . . . who care about the planet and who want to make purchases that contribute to the solution to, rather than the problem of, climate change." Id. ¶ 37. The following sample of statements are alleged to "greenwash" Defendants' businesses. Except as denoted, Plaintiff alleges that these statements are advertised on the internet, social media, globally circulated periodicals (e.g., Wall Street Journal, The Economist, Financial Times) and global news outlets (e.g., CNN).
• BP [FN6]
• "We [] want—and need—[ ] energy to be kinder to the planet. At BP, we're working to make our energy cleaner and better." Compl. ¶ 58; App. 7(a). BP is "working to make all forms of energy cleaner and better" because the company "agree[s]" that "the world needs fewer emissions." App. 7(h).
• In another advertisement in BP's "Possibilities Everywhere" campaign (this one called "Blade runners"), BP describes itself as "one of the major wind energy businesses in the US." Compl. ¶ 59; App. 7(a), (c).
• In a web promotion titled "Rise and shine," BP states that "[its] economics gurus believe [solar power] could account for 10% of the world's power by 2040," adding: "to help make that a reality, we've teamed up with Europe's largest solar company, [Lightsource BP]." Compl. ¶ 60; App. 7(b).
• BP promotes natural gas as "cleaner-burning," "burn[ing] 50% cleaner than coal in power generation," and providing "more energy with fewer emissions." Compl. ¶ 60; App. 7(d).
• "Oil and gas will be needed to meet energy demand for the growing population. See how we're making ours cleaner and better." App. 7(g).
• "All across BP, we are changing, encouraging our people to innovate, create, partner, and invest, exploring activities that you might not expect to support our net-zero ambition." App. 7(k).
• Shell
• "Shell is a bigger player than you might expect in this budding movement to realize a cleaner and more efficient transportation future." App. 5(c).
• Shell published an advertisement on The New York Times website stating, "[T]he paths [*7]to a future of net-zero emissions [ . . . ] won't happen overnight. [ . . . ] It'll involve forming supportive government policies and getting consumers to embrace lower-carbon options. It'll also require changing existing infrastructure, which could take decades. To help navigate this multistage challenge, [Shell] calls for the advancement of emerging technologies [ . . . ] if solutions beyond the power sector — including biofuels, hydrogen and some degree of carbon capture and storage — are fully embraced, it may be enough to enable a net-zero emissions world by 2070." Compl. ¶ 65(a); App. 5(d).
• "Powering progress together with more and cleaner energy solutions [lightning bolt emoji] #PoweringProgress." In a separate tweet, Shell states: "We power progress together by providing more and cleaner energy solutions for the world." App. 5(e).
• "[lightning bolt emoji] Expanding our electric vehicle charging network. Shell has signed an agreement to acquire 
@ubitricity, a leading #EV on-street charging provider, in its latest step to support drivers making the switch to lower-carbon transport. Founded in Berlin, Germany, ubitricity operates in a number of European countries, and is the largest public EV charging network in the UK with over 2,700 charge points. #electricvehicle #evcharging." App. 5(g).
• Exxon [FN7]
• Exxon published an advertisement on The New York Times website stating the company is "working to decrease our overall carbon footprint . . . " App. 3(a). A separate paid video post promotes Exxon's conversion of crop leftovers, wood waste, and switch grass into biofuel, which the company says its scientists are "exploring how to use . . . on a vast scale." Exxon claims that biomass is "cheap and abundant" and biofuels made from it have "the power to make a big difference." Compl. ¶ 45; App. 3(c).
• The LinkedIn post states: "We recently announced a plan to further reduce greenhouse gas emissions in our global operations by 2025, while aiming for industry-leading GHG performance by 2030. We are positioning for a lower-carbon energy future and this plan represents some of the most aggressive reductions in the industry." Compl. ¶ 48; App. 3(d).
• One image slide boasts: "Over the last 40 years, we have cumulatively captured the most CO2 of any company." Compl. ¶ 50; App. 3(e).
• "Chips and guacamole are an ideal combination. Kind of like natural gas and renewable energy." The accompanying video graphic then adds: "When it comes to cleaner energy, some things just work better together. We're leaders in natural gas which is reliable and abundant and supports renewable energy. Combined they're the perfect pair for a cleaner energy future." Compl. ¶ 65(b); App. 3(f).
• "ExxonMobil: Working to meet the world's growing #energy needs while addressing the risks of climate change [green planet emoji]." App. 3(h).
• "ExxonMobil is the leader in carbon capture, with current carbon capture capacity totaling about 9 million tonnes per year." App. 3(j).
II. Legal Discussion

A. Motion to Dismiss for Lack of Personal Jurisdiction
Defendants move to dismiss the Complaint for lack of personal jurisdiction pursuant to CPLR § 3211(a)(8), which states, in relevant part, "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . . (8) the court has not jurisdiction of the person of the defendant[.]" "To satisfy the jurisdictional basis there must be a constitutionally adequate connection between the defendant, the State and the action." Keane v. Kamin, 723 N.E.2d 553, 555 (NY 1999). Plaintiff needs only to make a "prima facie showing that the defendant is subject to the personal jurisdiction of the court." Whitcraft v. Runyon, 999 N.Y.S.2d 124 (2d Dept. 2014) (internal citations omitted). 
Here, each of the Defendants is a non-domiciliary subject to jurisdiction in New York provided that (1) the court has long-arm jurisdiction based on contacts in the state consistent with CPLR § 302(a), and (2) jurisdiction comports with due process. LaMarca v. Pak-Mor Mfg. Co., 95 NY2d 210, 214—217 (2000). The City asserts that it has made a prima facie showing that each of the Defendants is subject to personal jurisdiction in New York because they sell fossil fuel products in NYC and the sale of those products gives rise to the alleged violations of the CPL, CPLR § 302(a)(1), and because the alleged misleading statements caused injury to NYC consumers, CPLR § 302(a)(3).[FN8]
CPLR § 302(a)(1) requires proof of one transaction "so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 NY3d 65, 71 (2006) (internal citation omitted); see also D&R Global Selections, S.L. v. Bodega Olegario Falcon Ptheiro, 90 AD3d 403, 404 (1st Dept. 2011) ("Although CPLR 302 (a) (1) is a 'single act statute,' whereby physical presence is not required and one New York transaction is sufficient for personal jurisdiction, it is only applicable where the defendant's New York activities were purposeful and substantially related to the claim.").
Due process requires (1) the defendant must have "minimum contacts" with New York such that the defendant should reasonably anticipate being sued in New York; and (2) the maintenance of the suit against the defendant in New York must "not offend traditional notions of fair play and substantial justice." LaMarca, 95 NY2d at 216 (quoting Intl. Shoe Co. v. State of Wash., Off. of Unempl. Compen. and Placement, 326 U.S. 310, 316 (1945)). Essentially, if "a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended[.]" Kreutter v. McFadden Oil Corp., 71 NY2d 460, 466 (1988).
Here, the Complaint alleges that each Defendant sold fossil fuel products at branded gas [*8]stations in NYC and made statements in and targeted at NYC concerning their products. See, e.g., Compl. ¶¶ 26, 31(b), 32(a), 33(a), 83. Plaintiff alleges that the following statements are misleading and violate the CPL: (1) Shell's statements about their V-Power Nitro+ Premium gasoline (Compl. ¶ 32(b); App. 4(a)), (2) Exxon's statements about their Synergy Supreme+ gasoline (Compl. ¶ 31(c); App. 2(c)), and (3) BP's statements about their Invigorate-enhanced gasoline (Compl. ¶ 33(a); App. 6(a)). In addition to the product-related statements, Plaintiff alleges Defendants violated the CPL by publishing statements that presented themselves in a misleading fashion by "falsely presenting themselves as corporate leaders in the fight against climate change." Compl. ¶¶ 5—6, 40 ("ExxonMobil, Shell and BP are bombarding NYC consumers with advertisements which give the false impression that renewable and low-carbon energy is an extensive portion of their business."). Plaintiff alleges that Defendants crafted these statements to induce consumers to purchase fossil fuel products sold by Defendants within NYC. Compl. ¶¶ 8, 20.
While Defendants do not contest personal jurisdiction as to the product-related statements alleged to be made at branded gas stations in NYC and targeted at NYC consumers in The New York Times, they raise jurisdictional challenges on the basis of due process as to statements made outside of NYC and New York, arguing that Plaintiff has not established sufficient minimum contacts with NYC as to its nationwide advertising (e.g., advertising on company websites, social media, global or national periodicals, and news outlets). Defendants argue that such advertising campaigns are not targeted at New York, but at a national audience and therefore, fail to provide the necessary jurisdictional nexus. See NYSCEF Doc. No. 70 (Exxon Mem. of Law) at 19—22; NYSCEF Doc. No. 84 (BP Mem. of Law) at 26—27; NYSCEF Doc. No. 87 (Shell Mem. of Law) at 38—39. Defendants further assert that the Court must conduct a statement-by-statement analysis for any statement made outside of New York. See NYSCEF Doc. No. 70 at 18; NYSCEF Doc. No. 84 at 27; NYSCEF Doc. No. 87 at 38. 
Defendants' arguments are unavailing where the relied-upon case law does not involve defendants with a physical presence in the forum from which the claims arise, i.e. branded retail locations in NYC. See, e.g., NYSCEF Doc. No. 70 at 18; NYSCEF Doc No. 84 at 26. For example, Vallone v. CJS Solutions Group, LLC, involved a putative class action lawsuit in Minnesota regarding wages paid for travel time to Minnesota. The court required a "claim-by-claim" analysis to root out claims where putative class members traveled to other locations for the nondomiciliary defendant company, but had no contact whatsoever with Minnesota. 9 F.4th 861, 864—866 (8th Cir. 2021). The case of Edwards v. Schwartz was a defamation case alleging multiple counts where the nondomiciliary defendants had no relationship with the forum state, with the exception of one count, in which a letter was mailed to the forum state. 378 F. Supp. 3d 468, 495—498 (W.D. Va. 2019). While New York courts have held that social media posts on Facebook, Instagram, and LinkedIn and a request sent to a New York resident on LinkedIn do not alone constitute "purposeful availment," Gilbert v. Indeed, Inc., 513 F.Supp. 3d. 374, 412—416 (S.D.NY 2021), these cases do not involve facts where the defendant is alleged to have a physical presence in New York—such as retail locations.
Plaintiff argues that this Court does have personal jurisdiction over Defendants where Defendants have (1) purposefully availed themselves by virtue of "exploit[ing] a market in the forum State" and (2) asserting claims that have an "affiliation" or "relationship" between the underlying controversy and forum contacts as to each Defendant. Ford Motor Co. v. Mont. Eighth Jud. District Ct., 592 U.S. 351, 362, 364 (2021); see also id. at 366 ("there is a strong [*9]'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction") (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Plaintiff concedes that "passive websites or national advertisements alone do not establish personal jurisdiction," NYSCEF Doc. No. 108 (Pl. Opp'n to Shell's Mot.) at 17, but asserts that the retail sales of fossil fuel products in NYC in conjunction with the advertisements both at the retail locations and national advertising campaigns is sufficient to confer specific jurisdiction. See Compl. ¶¶ 6, 31(g), 45, 65, 81, 91. 
In the instant case, each of the Defendants is registered to conduct business in New York, where it operates retail gasoline stations that regularly transact fossil fuel products and where it advertises its products both in NYC and through internet platforms that are alleged to be targeted at NYC consumers—among others—to increase sales in NYC. Compl. ¶¶ 11(l), 12(j), 13(i). The Court finds these alleged facts to constitute a basis for exercising personal jurisdiction over Defendants as Plaintiff alleges something more than a passive website or national advertising campaign. See Grimaldi v. Guinn, 72 AD3d 37, 49 (2d Dept. 2010) ("[P]assive Web sites, when combined with other business activity, may provide a reasonable basis for the assertion of personal jurisdiction."). Moreover, the contacts alleged are not only as to quantity, but bear upon quality of the contacts that "demonstrate the purposeful availment necessary to confer personal jurisdiction" over out-of-state defendants. Paterno v. Laser Spine Inst., 24 NY3d 370, 377—378 (2014) (finding that the quality of contacts were insufficient to confer jurisdiction where they were "responsive in nature"). As the City argues, the quality of these purposeful contacts is not diminished by Defendants' websites and online advertising platforms addressing a nationwide market. See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 171—172 (2d Cir. 2010) (holding that the defendant's attempts to serve a nationwide consumer base through its website does not diminish purposeful contacts made with New York consumers).
The Court finds that Defendants' contacts with and activities in NYC were purposeful and are substantially related to the underlying claims of deceptive practices in NYC. Accordingly, the Court finds that the Complaint contains sufficient allegations to establish personal jurisdiction in New York over the Defendants pursuant to CPLR § 302(a)(1).[FN9]

B. Motion to Dismiss for Failure to State a Claim Under the CPL
On a motion to dismiss pursuant to CPLR § 3211(a)(7), "pleadings are to be afforded a liberal construction, allegations are taken as true, the plaintiff is afforded every possible inference, and a determination is made only as to whether the facts as alleged fit within any cognizable legal theory." CSC Holdings, LLC v. Samsung Elecs. Am., Inc., 146 N.Y.S.3d 17, 18 (2021) (internal citations omitted). Nevertheless, "[d]ismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences drawn from them do not allow for an enforceable right of recovery." Connaughton v. Chipotle Mexican Grill, Inc., 75 N.E.3d 1159, 1162 (NY 2017) (internal citations omitted). The test is "whether the proponent of the pleading has a cause of action, not [*10]whether he has stated one." Leon v. Martinez, 84 N.Y.S.2d 83, 87—88 (1994). Courts will grant a motion to dismiss where the plaintiff states a cognizable cause of action, but fails to assert a material fact necessary to meet an element of the claim. See, e.g., Arnon Ltd v. Beierwaltes, 3 N.Y.S.3d 31, 33 (2015).
The Complaint asserts two causes of action that Defendants engaged in deceptive trade practices in violation of the CPL, which prohibits "any deceptive or unconscionable trade practice in the sale, lease, rental or loan or in the offering for sale, lease, rental, or loan of any consumer goods or services, or in the collection of consumer debts." Deceptive trade practices include, in relevant part, "[a]ny false, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind made in connection with the sale . . . or in connection with the offering for sale . . . of consumer goods or services . . . which has the capacity, tendency or effect of deceiving or misleading consumers." N.Y.C. Admin. Code § 20-701(a). Deceptive trade practices include, but are not limited to, "representations that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have" and "the use . . . of exaggeration, innuendo, or ambiguity as to a material fact or failure to state a material fact if such use deceives or tends to deceive[.]" Id.; but see NY General Business Law ("GBL") § 349 [FN10]
(articulating no definition of deceptive acts or practices). Consumer goods are "primarily for personal, household or family purposes." N.Y.C. Admin. Code § 20-701(c).
Defendants argue that Plaintiff has not alleged the materiality of any purported omission where Plaintiff alleges that there is widespread public knowledge that fossil fuel products cause climate change. See Compl. ¶¶ 1, 4, 34. Because the City asserts that the product-related statements are misleading vis-à-vis Defendants' failure to disclose publicly known information (i.e., that fossil fuels contribute to climate change), they cannot be deemed as misleading. Put differently, a reasonable consumer would not be misled to believe that using Defendants' fossil fuel product does not contribute to climate change. See NYSCEF Doc. No. 70 (Exxon Mem. of Law) at 32; NYSCEF Doc. No. 84 (BP Mem. of Law) at 12—14; NYSCEF Doc. No. 87 (Shell Mem. of Law) at 17—19. Additionally, Defendants argue that the City fails to allege that the statements are actionable under the CPL because they are factually accurate statements, or statements of aspiration, opinion, or puffery that were not "made in connection with the sale" of consumer goods. 
As an initial matter, the parties dispute the standard for determining whether the statement at issue "has the capacity, tendency or effect of deceiving or misleading consumers" pursuant to N.Y.C. Admin. Code § 20-701(a). Plaintiff argues, based upon the Court of Appeals decision in Guggenheimer v. Ginzburg, 43 NY2d 268, 273 (1977), that the Court should adopt the unthinking-consumer standard for CPL claims. The court in Guggenheimer adjudicated claims brought under the CPL of 1969 and considered the patchwork multitude of consumer [*11]protection statutes enacted by the New York legislature (including GBL § 349) in holding that, "[i]n weighing a statement's capacity, tendency or effect in deceiving or misleading customers, we do not look to the average customer but to the vast multitude which the statutes were enacted to safeguard including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions." Id. Plaintiff's argument is at odds with the Complaint, which asserts that both causes of action arise from material misrepresentations that "had the tendency to deceive reasonable consumers." Compl. ¶¶ 81, 90 (emphasis added).
Defendants rebut that the Court of Appeals has retreated from this standard and adopted an objective reasonable-consumer standard. NYSCEF Doc. No. 70 at n. 12; see Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 85 NY2d 20, 26 (1995) (applying the reasonable-consumer standard to a GBL § 349 claim, which "complements the definition applied by the Federal Trade Commission to its antifraud provision (15 U.S.C. § 45) upon which the New York statute is modeled"); Gaidon v. Guardian Life Ins. Co. of Am., 94 NY2d 330, 344 (1999); see also Mogull v. Pete and Gerry's Organics, LLC, 588 F.Supp.3d 448, 453 (S.D.NY 2022) ("[a]n alleged act is materially misleading if it is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'") (internal citation omitted); Solomon v. Bell Atlantic Corp., 9 AD3d 49, 52 (1st Dept. 2004). While these cases do not address the standard under a CPL cause of action, they demonstrate the "retreat" from Guggenheimer's subjective standard in favor of an objective standard. Consistent with this trend, the objective standard has been applied in a CPL claim. Mintz v. Amr. Tax Relief, LLC, 16 Misc 3d 517 (NY Sup. Ct. 2007) (applying the objective reasonable-consumer standard of GBL § 349 to a CPL claim concerning statements that defendants alleged were inactionable puffery). 
The adoption of the reasonable-consumer standard is also consistent with the language of the CPL itself, which provides that rules and regulations under the CPL "shall not be inconsistent with" Federal Trade Commission Act, which adheres to a reasonable-consumer standard, and GBL § 350. N.Y.C. Admin. Code § 20-702; see also FTC v. LeadClick Media, LLC, 838 F.3d 158, 168—172 (2d Cir. 2016). As such, the Court's analysis applies the reasonable-consumer standard.
Count I: Product Greenwashing
Applying the reasonable-consumer standard and examining the product-specific statements at issue under the standard of CPLR § 3211(a)(7), which grants Plaintiff the benefit of every possible favorable inference, Plaintiff has failed to plausibly allege that the product-related statements are likely to mislead a reasonable consumer under the CPL. "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Lee v. Mikimoto (Am.) Co. Ltd., 2023 WL 2711825, at *5 (S.D.NY Mar. 20, 2023) (internal quotations and citation omitted). However, such a determination should be made sparingly because "whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact[.]" Gordon v. Target Corp., 2022 WL 836773, at *10 (S.D.NY Mar. 18, 2022) (dismissing GBL § 349 claim where plaintiff failed to allege product label was misleading) (internal quotations and citation omitted).
Plaintiff alleges each product greenwashing statement is misleading because it is not accompanied by a disclosure: "In advertisements and promotional materials published in [*12]connection with the sale or offering for sale of their fossil fuel products and services, ExxonMobil, Shell, and BP portray these fuels as good for the climate and the environment, without disclosing the material facts that those products significantly increase greenhouse gas emissions and are one of the primary drivers of climate change." Compl. ¶ 83 (emphasis added). In sum, Plaintiff alleges that Defendants made statements that constituted "half-truths" by painting themselves positively while failing to disclose the negative "half-truth" that Defendants and their products contribute to climate change. Id. The Appendix to the Complaint further illustrates Plaintiff's allegation that each product greenwashing statement is deceptive because it fails to disclose the material fact that the fossil fuel product emits substantial quantities of greenhouse gases that contribute significantly to climate change. However, Plaintiff cannot succeed on this theory where Plaintiff's own allegations concede that the connection between fossil fuels and climate change is public information. New York courts have determined that where the plaintiff does not plead facts that the defendant alone possessed the purported material information, a reasonable consumer cannot have been misled.
"A plaintiff can state a claim for omission under the GBL where the business alone possesses material information that is relevant to the consumer and fails to provide this information." Dixon v. Ford Motor Co., 2015 WL 6437612, at *8 (E.D.NY Sept. 30, 2015) (internal citations omitted); see also Lee, 2023 WL 2711825, at *5, *7; Gordon, 2022 WL 836773, at *10 (rejecting an omissions theory where the defendant alone did not possess the material information, which "pediatric health experts have been publishing . . . since as early as the 1980s"). New York courts have applied this requirement in cases where the plaintiff alleges both affirmative misrepresentations and omissions, as Plaintiff does here. See id. Therefore, Plaintiff's contention that the asymmetric-information requirement is limited to a pure omissions theory is unpersuasive. 
Plaintiff alleges that "climate change" has been "a central focus of consumers' anxiety about the future" that "driv[es] consumer choices" concerning "transportation and energy alternatives." Compl. ¶ 1. Plaintiff cites to a December 2019 Harris Poll in which "more than half of U.S. adults said climate change is the most important issue facing society today; 6 in 10 reported changing their habits to reduce their contribution to climate change, including becoming more reliant on renewable energy sources." Id. ¶ 21. Plaintiff has previously alleged "there is near universal consensus that global warming is primarily caused, or at least accelerated, by the burning of fossil fuels, which emits greenhouse gases like carbon dioxide and methane into the atmosphere." City of New York v. Chevron Corp. et al., 993 F.3d 81, 86 (2d Cir. 2021); see City of New York v. BP P.L.C. et al., 325 F. Supp. 3d 466, 468 (S.D.NY 2018) (the City alleged "[c]limate science clearly demonstrates that the burning of fossil fuels is the primary cause of climate change"); see also State v. BP Am. Inc. et al., No. N20c-09-097 MMJ, 2024 WL 98888 at *19 (Del. Super. Ct. Jan. 9, 2024) ("the general public had knowledge of or had access to information about the disputes, regarding the existence of climate change and effects, decades prior to the expiration of the five-year limitations period"); Mayor & City Council of Baltimore v. BP p.l.c. et al, 24-C-18-004219, Slip Op. at 34 (MD Cir. Ct. July 10, 2024) (holding that plaintiff's claims were time-barred where "[i]nformation as to [d]efendants' alleged misleading statements and false representations, true or not, was admittedly known by Baltimore years before 2015"). 
The City cannot have it both ways by, on one hand, asserting that consumers are aware of and commercially sensitive to the fact that fossil fuels cause climate change, and, on the other [*13]hand, that the same consumers are being duped by Defendants' failure to disclose that their fossil fuel products emit greenhouse gases that contribute to climate change. In this respect, the City's allegation that Defendants "conceal the central role of fossil fuels in causing climate change" is not cognizable where the City has otherwise conceded widespread public awareness of this information. See Compl. ¶ 37.
Moreover, the alleged product greenwashing statements are inactionable for independent reasons. First, certain of the alleged statements (see App. 2(a), (b), (c), (d), 4(a), 6(a)) are distortions of statements that have been taken out of context and Plaintiff does not—and cannot—allege that each statement when viewed "in light of its context on the product label or advertisement as a whole" is misleading to the reasonable consumer. Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013) ("in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial"); Lee, 2023 WL 2711825, at *6; Gordon, 2022 WL 836773, at *11. By way of example, the following comparisons highlight the discrepancies between the alleged statement and the statement in its context:

City's Allegation

Complete Statement

"Shell advertises on its website that these fuels 'produce[] fewer emissions' and that not using them can lead to 'higher emissions.'" Compl. ¶ 32(b). 

"The Nitrogen Enriched Cleaning System gives all three grades of Shell gasoline the ability to clean up gunk on intake valves and fuel injectors. Industry data indicates and car manufacturers recognize that a clean engine is more fuel efficient, produces fewer emissions and allows vehicles to perform at their best." NYSCEF Doc. No. 87 (Shell Mem. of Law) at 16.
  "Wear can occur slowly, over time, when two metal surfaces rub against each other, leading to loss of metal from those surfaces. This can occur in the piston assembly, fuel pump and fuel injectors and can cause higher oil consumption, loss of power and higher emissions. Shell V-Power® NiTRO+ provides our best protection against wear." Id. at 17.

"All grades of BP gasoline sold in the [sic] New York City have Invigorate, an additive that BP describes on its website as better than 'ordinary fuels' that have problems like 'increased emissions.'" Compl. ¶ 33(a).

"A new and improved version of bp gasoline with Invigorate® was introduced in April 2016, and we're proud to say this version is our best fuel ever—with versatility for both conventional port fuel injector engine technology, and emerging direct injection engine technology. It has 10 times better protection against intake valve deposits than ordinary, minimum-detergency fuels. Keeping intake valves clean is important because dirty deposits from ordinary fuels that form in engines can lead to a variety of problems—hesitation, rough starts, loss in fuel economy, and increased emissions to name a few. bp gasoline with Invigorate® not only helps prevent deposits from forming in the first place but can even help clean deposits left by minimum detergency fuels— giving drivers more miles with every tank." NYSCEF Doc. No. 83 (Reiter Aff. Ex. C).

"The messaging for this [*14]product states that Synergy Supreme+ is 'Our Best Fuel Ever,' and '2X cleaner for better gas mileage.'" Compl. ¶ 31(c).

Synergy™ gasoline "keep[s] your engine 2x cleaner for better gas mileage." NYSCEF Doc. No. 70 at 31.

Second, certain of the alleged product greenwashing statements are inactionable under consumer protection statutes because they constitute statements of aspiration, opinion, or puffery (e.g., photograph of a mountain sunrise with trees, "better than ordinary fuels," "take you further," "breakthrough formulation," "created to let you drive cleaner, smarter and longer," "Our Best Fuel Ever"). See Dwyer v. Allbirds, Inc., 598 F.Supp.3d 137, 153—154 (S.D.NY 2022) (depictions of "happy" sheep in "pastoral settings" and the statement "Our Sheep Live the Good Life" are classic, nonactionable puffery); Steinmetz v. Energy Automation Sys., Inc., 2014 WL 1386954, at *14 (NY Sup. Ct. Apr. 7, 2014) ("statements constituting opinion or puffery are protected against both statutory trade practices and false advertising claims"); see also Gomez-Jimenez v. NY Law School, 103 AD3d 13, 17 (1st Dept. 2012) ("a party does not violate GBL 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information"). No reasonable consumer would be misled by these subjective, non-specific, and vague statements to believe that the use of the Invigorate, Shell V-Power® NiTRO+, or Synergy fuel products does not contribute to climate change.
Accordingly, the Court grants Defendants' Motions to Dismiss Count I of the Complaint for violation of the CPL for failure to state a claim under CPLR § 3211(a)(7).
Count II: Corporate Greenwashing Statements
Plaintiff has also failed to allege that the corporate greenwashing statements are actionable under the CPL where the City does not allege that these alleged deceptive statements are "made in connection with the sale . . . or . . . offering for sale . . . of consumer goods or services." N.Y.C. Admin. Code § 20-701(a). The City urges the Court to adopt an expansive interpretation of the CPL that would render the "made in connection" requirement meaningless. The City's interpretation would have the effect of transforming any statement "about a company's brand or business, not just its products," NYSCEF Doc. No. 107 (Pl. Opp'n to BP Mot.) 19, into actionable conduct under the CPL. However, the statutory language of the CPL coupled with the dearth of New York legal authority to support such interpretation makes Plaintiff's corporate greenwashing cause of action unviable. 
Here, the statements as to investments in clean energy resources, such as wind and solar, and alternative energy sources, such as LNG, hydrogen fuel cells, and biofuels, are not alleged to be "made in connection with the sale" of a consumer good because Plaintiff does not allege that Defendants sell these non-fossil fuel products or technologies anywhere, let alone in NYC. The corporate greenwashing statements themselves are generic in nature and implicate broad policy initiatives and statements, as opposed to the sale of Defendants' fossil fuel or non-fossil fuel products: "exploring how to . . . create biofuel on a vast scale," Compl. ¶ 45; "We support the ambition to achieve net-zero emissions by 2050 and the goals of the Paris Agreement. Our newly released Energy & Carbon Summary outlines efforts to develop energy solutions that power modern life and progress toward a lower-carbon future," id. ¶ 49; "'setting the course' to [*15]develop the 'cleaner fuel alternatives' that '[t]he world will need'," id. ¶ 54; "We all want more energy, but with less carbon footprint. That's why at BP we're working to make energy that's cleaner and better," id. ¶ 58; "part of a mosaic of alternative energy sources," id. ¶ 65(a); "Chips and guacamole are an ideal combination. Kind of like natural gas and renewable energy," App. 3(f); see also Compl. ¶ 65(b).
Rather, the City alleges that Defendants' web of alleged misleading statements—made at different points in time and on different platforms—about non-fossil fuel related technologies and alternative energy sources has the cumulative effect of inducing NYC consumers into purchasing their fossil fuel products. Plaintiff's attempt to rely on the statute's use of the term "indirectly" does not salvage their claim. See, e.g., NYSCEF Doc. 107 (Pl. Opp'n to BP Mot.) 19 ("the CPL encompasses statements with 'the capacity, tendency, or effect of . . . indirectly deceiving or misleading consumers.'"). Even an allegation that a statement has the tendency to indirectly deceive a consumer must still be "made in connection with the sale" of a consumer good or services. See Polonetsky v. Better Homes Depot, Inc. et al., 97 NY2d 46, 53—54 (2001) (an "allegedly orchestrated [ ] system of providing services under which prospective buyers" were defrauded into buying a house is actionable under the CPL); see also City of New York v. T-Mobile USA, Inc., 126 N.Y.S.3d 311 (NY Sup. Ct. 2020) (alleging misstatements in connection with the sale of cell phones and services); Mintz v. Am. Tax Relief, LLC, 837 N.Y.S. 2d 841 (NY Sup. Ct. 2007) (alleging misstatements in connection with the sale of tax relief services).
Plaintiff provides no legal authority for the notion that statements about unrelated product (e.g., alternative fuels such as natural gas) or technologies (e.g., wind and solar energy) are actionable as related to the sale of a different product (fossil fuels). Not only are the alternative fuels and technologies not alleged to be sold to NYC consumers, but Plaintiff alleges that the consumer good that the Court should focus on for purposes of applying the CPL is a different consumer good. At bottom, the corporate greenwashing statements do not reference fossil fuel products. Absent any nexus to a consumer good sold in NYC, the Court is constrained to apply the CPL, as written, to the conduct alleged here.
The City encourages this Court to consider the applicable state or municipal consumer protection statutes in similar cases pending in other jurisdictions where consumer protection claims for greenwashing have survived dismissal. Contrary to those state or municipal consumer protection statutes, the CPL contains an explicit "made in connection with the sale" requirement. In Commonwealth v. Exxon Mobil Corp., the Commonwealth made similar allegations as the City does here that Defendant Exxon deceived Massachusetts consumers by promoting false and misleading greenwashing campaigns "designed to convey a false impression that a company is more environmentally responsible than it really is, and so to induce consumers to purchase its products." No. 1984CV03333BLS1, 2021 WL 3493456, at *13 (Mass. Super. June 22, 2021). The Massachusetts statute makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," and defines trade and commerce as including not only the "offering for sale" of "any services or property," but "any trade or commerce directly or indirectly affecting the people of this commonwealth." G.L.c. 93A §§ 1, 2(a) (emphasis added). Defendant Exxon proffered the argument that the challenged greenwashing statements are not in connection with the sale of any services or property. In applying the broader language of this statute, the court determined that the Commonwealth had sufficiently alleged Exxon engaged in deceptive practices. 
Similarly, the Vermont Consumer Protection Act, 9 V.S.A. § 2453, et seq., adopts an "in [*16]commerce" requirement in prohibiting "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." And unlike New York, Vermont has recognized and defined greenwashing as "'public relations and marketing tactics designed to make a company or product appear environmentally friendly even though it has little or no meaningful impact on harm reduction[.]'" Vermont v. Exxon Mobil Corp., No. 21-CV-02778, 2024 WL 5189025, *2 (Vt. Super. Ct. Dec. 11, 2024) (citing to the complaint). In a recent decision, the Superior Court of Vermont conducted an analysis of the "in commerce" requirement, whereby the "alleged deceptive acts need not have occurred in the context of a specific consumer transaction," and allowed allegations of greenwashing—similar to those alleged in this case—as well as climate science denial campaigns to survive dismissal. Id. at *8—9.
The City also relies on the D.C. Court of Appeals decision in Earth Island Inst. v. Coca-Cola Co., where the court determined that the plaintiff plausibly alleged that Coca Cola's statements about its environmental sustainability efforts mislead consumers. 321 A.3d 654 (D.C. 2024). While there are material distinctions between the alleged deceptive statements in Earth Island as compared to the allegations here, see, e.g., NYSCEF Doc. No. 191 (BP Reply) at 12, chief among them is the material difference in statutory language. Under the District of Columbia Consumer Protection Procedures Act ("DCCPA") people and businesses are prohibited from engaging in unfair and deceptive trade practices, including misrepresentation "as to a material fact which has a tendency to mislead." D.C. Code § 28-3904(e). There is no requirement under the DCCPA that the alleged misrepresentation is in connection with the sale of a consumer good, rather "one need only plausibly allege that the 'merchant 'misrepresented' or 'failed to state' a material fact' related to its good or services." Earth Island, 321 A.3d at 664 (internal citation omitted). 
As such, the statutes applied in cases where similar claims have survived dismissal are broader than the present iteration of the CPL, justifying the discrepancies within the judicial determinations. 
Accordingly, the Court grants Defendants' Motions to Dismiss Count II of the Complaint for violation of the CPL for failure to state a claim under CPLR § 3211(a)(7).
C. Statute of Limitations & Res Judicata
Notwithstanding the foregoing, the Court addresses Defendants' argument that, pursuant to CPLR § 3211(a)(5), any claims for statements originally made before April 22, 2018, are time-barred by the three-year statute of limitations under CPLR § 214(2), which applies to "an action to recover upon a liability, penalty or forfeiture created or imposed by statute." See Morelli v. Weider Nutrition Grp., Inc., 275 AD2d 607, 608 (1st Dept. 2000) (three-year statute of limitations for claims brought pursuant to GBL § 349); Cole v. Equitable Life Assur. Soc'y. of U.S., 271 AD2d 271, 272 (1st Dept. 2000). Defendants further argue that the City's claims for statements that predate January 9, 2018—when the SDNY Action was filed—are barred by res judicata.
The City acknowledges the applicable three-year limitations period and has stated previously to the Court that Defendants' statute of limitations arguments are moot because it "does not seek to hold [Defendants] liable for CPL violations that occurred outside the limitations period," NYSCEF Doc. No. 38 (Pl. 7/15/24 Letter to the Court) at 2. Furthermore, the parties executed a stipulation stating that the "City of New York does not seek civil penalties [*17]in this case for any violation of the CPL that occurred on or before April 21, 2018," and that "three-year statute of limitations under CPLR § 214(2) applies to each of the City of New York's CPL claims in this case insofar as those claims seek to recover civil penalties for alleged violations of the CPL." NYSCEF Doc. No. 104 (So Ordered Stip.) ("Stipulation"). The parties filed the proposed stipulation on July 29, 2024.
To the extent Plaintiff seeks to vitiate the parties' Stipulation, see, e.g., NYSCEF Doc. No. 107 (Pl. Opp'n to BP's Mot.) at 36—37, the Court will not countenance such arguments as they are contrary to the parties' agreement and Plaintiff's explicit statement that Defendants' statute of limitations arguments are mooted by the parties' Stipulation. See Charlop v. A.O. Smith Water Products, 884 N.Y.S.2d 1, 2 (1st Dept. 2009) ("[A] party will not be relieved from the consequences of a stipulation unless there was sufficient cause to invalidate it, such as fraud, mistake, collusion, accident, or some other ground."). Plaintiff also provides no legal authority for the proposition that CPLR § 214(2) does not apply to the entire action and/or that equitable remedies may have different limitations periods (i.e., that the Court should parse out Plaintiff's request for civil penalties from injunctive relief).
Plaintiff, instead, argues that the continuing violation doctrine tolls the statute of limitations where the alleged misleading statement was circulated post-April 2018, and based on its interpretation of N.Y.C. Admin. Code § 20-703, that a defendant violates the statute every time that consumers are exposed to the deceptive statement. Plaintiff's sole authority for this proposition is Aponte v. Raychuk, 172 AD2d 280, 281 (1st Dept. 1991). Aponte does not advance Plaintiff's contention as it involved a motion for default judgment against a defendant who continued to publish ads (with the quantity, place, and dates of the ads alleged as violations) despite receiving a notice of violation by the Department of Consumer Affairs and in violation of a temporary restraining order. As Defendants point out, Plaintiff endeavors to graft a new standard with respect to the application of the continuing violation doctrine on CPL claims based on the penalties provision, which is after liability has been established. At this stage, Plaintiff has yet to allege information sufficient for the Court to assess the number of violations and therefore penalties where it does not allege, for example, where the statement was made, the date(s) the statement was made, the date(s) it was accessed, how many NYC consumers accessed the statement, and where it was disseminated.
To the extent Plaintiff argues that the continuing violation doctrine applies because its claims are based on a series of independent, distinct wrongs, see, e.g., NYSCEF Doc. No. 108 (Pl. Opp'n to Shell's Mot.) at 35, Plaintiff has not alleged that each statement constitutes an independent, deceptive act. See Henry v. Bank of Am., 147 AD3d 599, 601 (1st Dept. 2017) (continuing violation doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct"); Harvey v. Metro. Life Ins. Co., 827 N.Y.S.2d 6, 6—7 (1st Dept. 2006). Rather, Plaintiff's allegations rely on interpreting Defendants' actions in sum. See, e.g. Compl. ¶ 37. This deficiency is most apparent with respect to Plaintiff's allegations of corporate greenwashing where it alleges that a mosaic of statements from different platforms and at different points in time misled NYC consumers. Such a theory implicitly does not allege independent acts of wrongdoing.
Accordingly, the Court holds that allegations of violations for statements made before April 22, 2018, are time-barred under CPLR § 214(2) and pursuant the parties' Stipulation. Plaintiff does not dispute that Defendant Shell's alleged statements about its V-Power NITRO+ Premium Gasoline and Nitrogen Enriched Cleaning System were published in 2015, and [*18]accordingly, Count I is dismissed in its entirety as to Defendant Shell on the independent grounds that it is time-barred. 
Based on the foregoing, the Court need not address whether the claims for violations occurring prior to January 2018, when the SDNY Action was filed, are also barred by res judicata. 
D. Violation of First Amendment
The Court need not address whether the City's claims violate the First Amendment because it has determined that both causes of action fail to state a claim under CPLR § 3211(a)(7).
E. New York Anti-SLAPP
The Court refers to its Decision and Order rendered on the record on November 1, 2024, wherein the Court declined to grant API's Motion to Dismiss the Complaint on the grounds that the City's claims are barred by New York's anti-SLAPP statute, codified at CPLR § 3211(g). The Court determined that there is no legal precedent as to whether the statute applies to actions brought by governmental agencies. Relying on the apparent legislative intent and purpose of New York's anti-SLAPP legislation, the Court distinguished private actors from governmental actors. In doing so, the Court determined that the anti-SLAPP statute does not apply to government enforcement actions. See NYSEF Doc. No. 208 (11/1/24 Tr. 127:9—129:16). For the same reasons as set forth on the record after oral argument held, the Court denies Defendants' Motions to Dismiss under CPLR § 3211(g). 
III. Conclusion
The Court has considered the parties' remaining contentions and finds them unavailing. Upon the foregoing, it is hereby
ORDERED that the Motion to Dismiss the Complaint by Defendants ExxonMobil Corporation and ExxonMobil Oil Corporation (Mot. Seq. No. 007) is GRANTED under CPLR § 3211(a)(5) as to alleged statements made before April 22, 2018, and for failure to state a claim under CPLR § 3211(a)(7); and it is further
ORDERED that the Motion to Dismiss the Complaint by Royal Dutch Shell PLC and Shell Oil Company (Mot. Seq. No. 008) is GRANTED under CPLR § 3211(a)(5) to the extent that the Complaint's first cause of action is time-barred with respect to conduct that occurred before April 22, 2018, and granted for failure to state a claim under CPLR § 3211(a)(7); and it is further
ORDERED that the Motion to Dismiss the Complaint by Defendants BP p.l.c. and BP America Inc. (Mot. Seq. No. 009) is GRANTED under CPLR § 3211(a)(5) as to alleged statements made before April 22, 2018, and for failure to state a claim under CPLR § 3211(a)(7); and it is further
ORDERED that the Motions to Dismiss are DENIED on grounds pursuant to CPLR § 3211(g); and it is further
ORDERED that the Clerk of the Court is directed to enter judgment accordingly in favor of Defendants ExxonMobil Corporation, ExxonMobil Oil Corporation, Royal Dutch Shell PLC, Shell Oil Company, BP p.l.c., and BP America Inc.
The foregoing constitutes the Decision and Order of the Court.
DATE January 14, 2025
ANAR RATHOD PATEL, A.J.S.C.

Footnotes

Footnote 1:Pursuant to this Court's Decision and Order dated November 6, 2024, the Court granted Defendant API's Motion to Dismiss the Complaint as to Defendant API. NYSCEF Doc. No. 209 (11/6/24 Decision and Order).

Footnote 2:Plaintiff asserted a third cause of action in the Complaint against Defendant API, which the Court dismissed pursuant to the November 6, 2024 Decision and Order. See id.

Footnote 3:The parties appeared before this Court for a Pre-Motion Conference on July 17, 2024. NYSCEF Doc. No. 105 (7/17/24 Tr.).

Footnote 4:See NYSCEF Doc. No. 84 (App. to BP's Mem. of Law, chart summarizing BP-specific allegations and BP's responses thereto).

Footnote 5:See NYSCEF Doc. No. 178 (Ex. A to Exxon's Mem. of Law in Reply, chart summarizing Exxon's bases for dismissal as to each allegedly deceptive statement in the Complaint and Appendix thereto attributed to ExxonMobil).

Footnote 6:See n. 4. 

Footnote 7:See n. 5. 

Footnote 8:New York's specific jurisdiction statute states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or owns, uses or possesses any real property situated within the state." CPLR § 302(a)(1), (3).
Footnote 9:Because the Court concludes that Defendants transacted business within the state under CPLR § 302(a)(1), this Decision and Order does not address the question of whether the Court could properly exercise jurisdiction under CPLR § 302(a)(3).

Footnote 10:GBL §§ 349, 350 comprise the State's consumer protection statute. GBL § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and GBL § 350 prohibits, "[f]alse advertising in the conduct of any business, trade or commerce." New York courts have relied upon the application of GBL §§ 349, 350 in adjudicating claims brought pursuant to the CPL. Mintz v. Amr. Tax Relief, LLC, 16 Misc 3d 517 (NY Sup. Ct. 2007). Additionally, each of the parties in this action rely on cases applying GBL §§ 349, 350.